BLANDY et al., Appellants, v. ASHER.

72   27
43a  13,
72   27
110  232

1. **Divorce, as Affecting Wife's Homestead Rights.** Divorce obtained by the wife will not deprive her of her homestead rights acquired during coverture in her husband's land, where she continues to reside upon it with her minor children. HOUGH and HENRY, JJ., dissenting.

2. **Abandonment by Husband of his Family, as Affecting Question of Homestead.** In the absence of evidence that a man who has abandoned his wife and children and has suffered a divorce from his wife, has since acquired a homestead elsewhere, a place which was his homestead at the time of the abandonment and continues to be the residence of his children and their mother, will still, for the purpose of preserving the rights of the children, be treated as his homestead.

3. **Homestead:** EJECTMENT. A defendant in ejectment cannot claim under the homestead act land exceeding in value the statutory limit.

*Appeal from Gentry Circuit Court.*—HON. S. A. RICHARDSON, Judge.

REVERSED.

Ejectment. Plaintiffs claimed through a sale under execution against Lewis Asher. The defendant, who was formerly the wife of said Lewis, but had obtained a divorce from him, claimed under the homestead act.

*Geo. W. Lewis, Wm. Hubbard, Bennett Pike* and *Vinton Pike* for appellants.

*Lay & Belch,* with *Goodman, Collins & Howell* for respondents.

SHERWOOD, C. J.—The questions presented by the record are: 1st, Was the right acquired by the wife by reason of her filing her statutory claim to the homestead, lost in consequence of the divorce she subsequently obtained? 2nd, Even if such right was defeated and determined as to the wife, by the judgment which dissolved the marital

relations existing between the parties, does such overthrow as to the wife's right in the premises, entitle plaintiffs to be successful in this action? These questions will be considered in the order presented.

No one can read with any degree of attention the provisions of our homestead act without reaching the same conclusion arrived at by most courts in construing similar legislative enactments, that such provisions were designed to mark out a course of enlightened public policy, whereby each family might secure a shelter, a place of refuge, against the storms of financial misfortune, which the greatest amount of human prudence and sagacity cannot always avert. Taking such a view, courts, for the most part, have held that these homestead laws, being of a liberal and beneficent nature, being designed to prevent pauperism and vagrancy and their consequent temptations to crime, should not be dwarfed, and their evident purpose thwarted by a narrow and illiberal construction. Thompson on Homesteads, § 1, *et seq.*, and cases cited. Such statutory exemptions respecting land, are not in derogation of common law, and consequently, not to be strictly construed, because the whole matter of the sale of real estate under *fi. fa.*, likewise its exemption from such sale, is of purely statutory origin and regulation. Ib., §§ 2, 3 and 4.

1. DIVORCE, AS AFFECTING WIFE'S HOMESTEAD RIGHTS.

The law under which Alice Asher filed her claim, is as follows: "The homestead of every housekeeper, or head of a family, consisting of a dwelling house and appurtenances, and the land used in connection therewith, * * shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided, * * and any married woman may file her claim to the tract or lot of land occupied or claimed by her and her husband, or by her, if abandoned by her husband, as her homestead; said claim shall set forth the tract or lot claimed, that she is the wife of the person in whose name the said tract or lot appears of rec-

ord, and said claim shall be acknowledged by her before some officer authorized to take proof or acknowledgment of instruments of writing affecting real estate, and be filed in the recorder's office, and it shall be the duty of the recorder to receive and record the same. After the filing of such claims, duly acknowledged, the husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever. Every such sale, mortgage or alienation is hereby declared null and void, and the filing of any such claims as aforesaid with the recorder shall impart notice to all persons of the contents," etc. This law was approved and took effect March 24th, 1873. Acts 1873, p. 16, § 1; R. S., § 2689.

The judgment upon which plaintiffs rely, was rendered against Lewis Asher March 12th, 1873, the execution issued and levied two days thereafter, and the sale occurred September 1st of that year. Prior to that sale, August 23rd, 1873, the then wife had filed her claim to the homestead. She obtained a judgment of divorce at the September term, 1875. Lewis Asher, her husband, left her August 11th, 1872, and returned but once, and that was about three years before the trial of this cause, at the September term, 1876. The place claimed by Alice Asher had been occupied and resided on by herself, husband and family of children, as a home, from 1864 up to the time he left; and since that time she and her minor children had continued thus to reside on and occupy it; and she was in fact, if not in law, the head of the family.

The above being, then, the facts in this case, the question proposed at the outset recurs: Did the wife by the exercise of her statutory right to obtain a divorce, lose her previously acquired statutory right to her homestead? In the *State v. Pitts*, 51 Mo. 133, it was said: " The legislature in the provisions of the law respecting homesteads uses the broadest language and exempts from attachment and execution, the homestead in all cases, except as therein provided." And so it was held in that case, that though

in general the State is not within the purview of a statute unless specially named, yet that, as no reservation was made in the homestead act in favor of the State, the homestead of the defendant could not be sold under an execution issued in the name of the State on a forfeited recognizance. Neither in instances like the present does the homestead act make any reservation in favor of a creditor as against the homestead of a wife, who, abandoned by her husband, files her claim and secures her homestead, because of the very fact of such abandonment.

It is to be observed, that while the statute under consideration is careful to provide a way whereby a woman, abandoned by her husband, may gain a homestead, that statute nowhere provides any means whereby the homestead thus gained shall be forfeited and lost. And who shall gainsay the statute? The rule of the statute is the exemption of the homestead; and that exemption prevails, " except as therein provided." *State v. Pitts, supra.* By the express terms of the statute, after the wife's claim is filed, the husband is " debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever; and every such sale, mortgage or alienation is hereby declared null and void." And the only exception to the entire inalienability of the wife's homestead, thus acquired, is that provided by a subsequent clause of the same section, where, by her own voluntary act, she may join with her husband in conveying such homestead. Under a somewhat similar statute in Illinois, where the amendatory act of 1857 prohibited alienation by the husband without the concurrence of the wife, it was held that the statute created a homestead exemption in her, as against the creditors of the husband and his alienees. *Turner v. Bennett* 70 Ill. 263.

But it is said that the section above quoted "is designed for the benefit of abandoned wives, not divorced wives." This position, though plausible and ingenious, is untenable; and it is untenable for this reason, if no other;

It would require an interpolation of the statute with words to this effect: *Provided,* however, that whenever the wife, thus abandoned, shall obtain a divorce because of such abandonment, she and her minor children may be forthwith ejected from the homestead, acquired as aforesaid, by any creditor who theretofore may have sold such homestead under execution issued against her former husband. I know of no authority, and possess no inclination to thus judicially legislate. And yet it is only by means of such judicial legislation that plaintiffs' position can be upheld, for the statute, as it stands, uses no such language as that used by way of illustration, nor any expression from which a similar meaning can reasonably be inferred. And it would be strange indeed if the law were otherwise than I have stated; strange indeed, that the legislature should so sedulously, should with such emphatic language prohibit the husband from disposing of the homestead, and yet permit the deserted wife, divorced because deserted, and her helpless little ones, to be ruthlessly expelled, at the instance of some rapacious creditor, from the very shelter that the law said should be hers, upon the filing of her claim for that purpose. Surely, a law conducing to such harsh results, would possess no single attribute entitling it to be called "liberal, wise and benevolent," "beneficent" or "humane in its character," or as one "especially designed to guard the wife and children against the neglect, the misfortunes and improvidence of the father and husband." *State ex rel. Meinzer v. Diveling,* 66 Mo. 375, and cases cited.

The reason of the law is said to be the life of the law. If the homestead act is especially designed for the protection of the wife and children, how does the reason for their protection cease, because the wife is separated from her husband by divorce instead of by death? And how is the necessity for that protection diminished, because the fact of abandonment gives simultaneous origin to the right of homestead and the right of divorce? The same law which gives the deserted wife the right of homestead, confers on

the widow a similar right.   But I suppose it would scarcely
be contended that a widow who should re-marry, would
thereby cease to be the widow of the decedent within the
meaning of the homestead act, and consequently disenabled
to continue to hold her homestead in that capacity.   And
still, such contention would very closely resemble the dis-
tinction attempted to be drawn here, between an abandoned
wife and a divorced wife.   The statute recognizes no such
distinction, and every consideration of sound reason, as
well as the contemplation of the purpose and policy of the
statute forbid that it be entertained.

I concede that the 1st section of the amendatory act
of 1873, above quoted, does not say that on the filing of
the wife's claim the homestead shall " pass to and vest
in " the wife, as does the 5th section of the original act in
regard to the widow, but language tantamount to that, in
its practical effect as against the husband, his alienees and
creditors, is employed (*Turner v. Bennett, supra*), language
much broader than that of the Illinois statute, language
which confers on the abandoned wife the affirmative right
of making claim for a homestead, and then, after the claim
is made and the homestead is secured, exempts that
homestead from " attachment and execution," and point-
edly prohibits its alienation " in any manner whatever" by
the husband.

I have been able to find no adjudicated case precisely
like this one in all its features, but have found two, which
in principle, support the views here expressed.   In . *Sellon
v. Reed*, 5 Biss. 125, a wife in the possession of premises as
her home, filed her bill for and obtained a divorce from
her husband, the decree awarding to her the custody of
her minor children, as well as alimony.   The only defense
set up to the ejectment brought by the alienee of the hus-
band, was a right of possession under the homestead act,
and such defense was held good, Blodgett, J., remarking:
" Following the spirit of the adjudications, so far as made
by the courts of this State, I think the defense set up is

made out by the facts. The principle of those decisions seems to be that the homestead estate is carved out of the general estate, and vested in the head of the family. The wife cannot be divested of her homestead right without a deed solemnly executed and acknowledged by her in the manner pointed out by the statute. In this case the wife acquired her homestead right in the property, and, at the time the divorce was applied for, was living thereon as her home. By the decree of divorce she is charged with the custody and care of the child, and thus continued as the head of the family." The learned judge then proceeded to quote from *Van Zant v. Van Zant*, 23 Ill. 536, where the supreme court of Illinois, (although in a case not requiring the point to be decided, as the wife was held otherwise entitled to the premises,) said : "The intention of the act is manifestly to save the homestead for the family, and there is the same necessity for a home when the householder is living as when he is dead, hence the right to this homestead not having been released by Van Zant, inures to his family. The question now arises, did the divorce of the wife destroy this right? The natural death of the householder would not destroy it, nor would his civil death for crime. If this was not so, the object of the act would be defeated and the beneficence of the legislature of no avail. The wife was the meritorious cause of the divorce, the children composing the family were committed to her care and nurture, and have, in our judgment, an undoubted right to occupy the homestead. As a home, and as their home, it has never been granted away, or the right to occupy it released or waived by any one competent to release or waive it. The spirit and policy of the homestead act seems to demand this concession, and to regard the complainant, for this purpose, as a widow and the head of the family."

In *Bonnell v. Smith*, 53 Ill. 375, it was held that where the wife of a party having a homestead right, obtained a divorce from him, she being the meritorious cause thereof,

and the custody of their child being committed to her, she became the head of the family, and the homestead right passed to her as such by operation of the statute, and could not be defeated by sale under execution occurring subsequently to the divorce, but issued on a judgment rendered prior to the divorce.

I am unable to distinguish this case in point of principle from those I have just cited. It is true that in the present instance it does not appear that the children were awarded by the judgment of divorce to the custody of their mother, but I cannot regard this as materially affecting her homestead right. She was, to all intents and purposes in fact, if not in law, the head of the family, and entitled to all the benign protection which the homestead act was designed to confer.

Guided by the foregoing reasons and authorities, I am of the opinion that the divorce of the wife did not alter her status so far as concerns her homestead right; that by filing her claim, that right became fixed and absolute, as against her husband and his creditors; a right which neither the decree of divorce, nor a judicial sale could alter, take away or lessen. And it may be remarked in conclusion of the point in hand, that I should take the same view, whether I construed the statute in question liberally or otherwise. A liberal construction would certainly tend to the conclusion announced, but if it be true that the creditor, as well as the debtor, has no rights under the execution laws, except those conferred by those laws, then the same result will attend, at least so far as concerns the present case, a strict as well as a liberal construction of them.

But conceding that there is a distinction to be taken between a wife abandoned and a wife divorced; conceding 2. ABANDONMENT BY HUSBAND OF HIS FAMILY, AS AFFECTING QUESTION OF HOMESTEAD. that the divorce accomplished all that plaintiffs claim it did, are they, upon the evidence adduced, bettered by such concessions? I think not, and for these reasons: It does not appear that

Lewis Asher had ever gained another homestead. Now, if a residence be gained, it is presumed to continue until a new one is gained, (*Cadwalader v. Howell*, 18 N. J. L. 138;) and so of a homestead. Mr. Thompson says; " It has frequently been decided that the act of desertion by the husband cannot have the effect of changing the home of either the husband or his deserted family." Thompson on Homesteads, § 277, and cases cited. This was the ruling in *Moore v. Dunning*, 29 Ill. 135, Caton, C. J., remarking : "The only question, therefore, is, whether the desertion by the husband, leaving his family still occupying the homestead, was an abandonment of it as a homestead. To this there can be but one answer, which is in the negative. This place still continued the home and residence of the husband as well as his family, at least until it is proved that he acquired a home and settlement elsewhere, and this the law can never assume he has done. The presumption is that he continues a wanderer without a home, until he returns to his duty and his family." This ruling was followed in *White v. Clark*, 36 Ill. 285, where ejectment was brought against the wife, and she had not relinquished her homestead right, and it was ruled that the execution sale passed nothing, and upon these facts appearing, a *prima facie* case was made out, and the burden was on plaintiff to show that his case fell within some of the exceptions of the statute.

So that it will be observed that even if the decree of divorce accomplished all that plaintiffs claim it did, even if it defeated or overthrew the wife's right, and made her a mere trespasser and unwelcome intruder in her former home, still plaintiffs' case is not bettered thereby, because if that was the effect of the decree of divorce, a statement which I deny, inasmuch as no new homestead appears to have been gained by the husband, his old one will be presumed to continue, in which event, plaintiffs certainly could not eject the children of the husband and father, Lewis Asher, without making him a party defendant to the ac-

tion, as he, then, would be the head of the family, and his rights could not be affected unless thus made a party.

Notwithstanding the conclusions already announced, the judgment must be reversed, because the testimony showed that the land claimed by Alice Asher exceeded in value the statutory limit, and the declaration of law given on her behalf ignored the question of value. Judgment reversed and cause remanded. NAPTON and NORTON, JJ., concur; HOUGH and HENRY, JJ., are not of opinion that the former wife is entitled to a homestead.

3. HOMESTEAD: ejectment.

HOUGH, J., DISSENTING.—In Illinois, and perhaps elsewhere, it is provided by statute that the court which grants a divorce shall dispose of the homestead estate according to the equities of the case. Acts of Ill. 1871–2, p. 478, § 5. No court in this State is invested with any such authority. Our homestead act provides for the wife, and continues in her, in the event she should become a widow, the right so acquired and held by her as wife. But it makes no provision whatever for women who have been divorced. *Brown v. Brown*, 68 Mo. 396. It is said, however, in the opinion of the majority, that the statute makes no distinction between an "abandoned wife" and a "divorced wife." There is no such person known to the law as a "divorced wife." The phrase is a solecism. When a woman is divorced, she is no longer a wife, and cannot be the widow of the person from whom she is divorced. *Dobson v. Butler*, 17 Mo. 87. Such a person, therefore, cannot claim the benefit of the provisions made by the homestead law for wives and widows.

The position is also impliedly assumed, that as the statute gave Mrs. Asher a right to a homestead, and also gave her a right to a divorce, the exercise of her statutory right to obtain a divorce could not divest her of her statutory right to a homestead. As well might it be said that as the statute gives the wife a right to a homestead, and a

right also to join her husband in conveying it away, the exercise of her statutory right to convey will not destroy her statutory right to the homestead. The consequence of the exercise of a statutory right must, of course, depend upon the nature and legal effect of the right exercised. A strange condition of things would ensue under the ruling of the majority, if Lewis Asher, having a right to the custody of his children, should marry again and claim the homestead. I am of the opinion that the right of Alice Asher to a homestead ceased when she ceased to be the wife of Louis Asher. HENRY, J. concurs.