## SUSAN WILLIAMS, Appellant, v. WALLACE WILLIAMS et al., Respondents.

**Kansas City Court of Appeals, February 5, 1912.**

1. **HOMESTEAD: Husband and Wife: Abandonment: Equity.** Where a husband abandons his wife, without just cause, and leaves her in possession of the homestead, which is encumbered by a deed of trust, executed by both husband and wife, equity will require the investment of the proceeds of a sale of the homestead under the deed of trust in excess of the amount necessary to extinguish the lien of the deed of trust, in another homestead for the use and benefit of the wife.

2. ————: ————: ————. The right of homestead is purely a creature of statute and rests in the husband and father as the head of the family, and not as an individual. When he abandons his headship, forsakes his family, the right devolves on the wife who succeeds him in family leadership.

3. ————: ————: **Equity of Redemption.** A homestead may be encumbered by the husband and wife joining in the deed of trust, but the equity of redemption remains subject to the right of homestead and the surplus derived from the sale under the deed of trust must be regarded as real estate impressed with such right.

Appeal from Boone Circuit Court.—*Hon. David H. Harris*, Judge.

REVERSED AND REMANDED (*with directions*).

*Williams & Williams, C. B. Sebastian* and *C. J. Walker* for appellant.

(1) The wife has such an interest in the homestead that it cannot be mortgaged or sold by the husband without she joins in the mortgage or deed. 2 R. S. 1909, sec. 6704; Bushnell v. Loomis, 234 Mo. 371. (2) The wife, by joining in a mortgage or deed of trust only surrenders her homestead rights to the extent necessary for the purposes of the mortgage. The homestead remains in the equity of redemption. State ex rel. v. Mason, 88 Mo. 222; Reed Bros. v.

Nicholson, 189 Mo. 396.   (3)  As the property, sub-
ject to the deed of trust, continued to be the home-
stead, when that interest was sold and the money
paid into court, it represented the homestead and
should be treated accordingly.   Elstroth v. Young,
83 Mo. App. 253; Morrill v. Skinner, 77 N. W. 375;
Dunning v. Bank, 61 N. Y. 497.   (4) The money, after
the payment of the mortgage debt, was paid into court
and was subject to its control and disposition.  The
money was so deposited upon the motion and at the
request of the defendant.  It should be treated as an
application by the trustee for directions as to the dis-
position of the fund.  The court, in disposing of the
money, should protect the rights of the plaintiff.  It
is in evidence that the husband induced her to sign
the mortgage by promising that, in case of a sale, the
money should be divided between them, which would
necessarily be in satisfaction of her homestead and
dower rights.   O'Day v. Meadows, 194 Mo. 588.

*Gillespy & Conley* for respondents.

(1) The wife has no estate or interest in the
homestead during her husband's life, but a mere veto
power or power to prevent him from selling or mort-
gaging it without her joining him.   Bushnell v. Loom-
is, 234 Mo. 385, *et seq.;* Snodgrass v. Copple, 203 Mo.
480; Smith v. Scherck, 60 Miss. 491; Massey v. Wom-
ble, 69 Miss. 347; Hoyt v. Howe, 3 Wis. 752.  The
homestead may be fixed or changed without the assent
of the wife.  Williams v. Swetland, 10 Iowa, 51.  The
right of homestead is purely statutory and the wife's
interest in the homestead is wholly embraced within
the terms of the statutes.  Kennedy's Admr. v. Dun-
can, 137 S. W. (Mo.) 299; Hanson v. Jones, 109 Pac.
868; Gillespie v. Gas Co., 86 N. E. 219.  The right
of homestead is a mere personal right or privilege, a
mere right of exemption from execution.  Middleton

v. Johnson, 110 S. W. (Tex.) 789; Brewington v. Brewington, 211 Mo. 48. A homestead being purely statutory, there is no greater right or estate therein than the statute creates. Mansfield v. Hill, 107 Pac. 471. The statute does not give the wife, so long as the husband is alive, any estate in the homestead property at all, but only the right to refuse to join in a mortgage or deed and thereby defeat its alienation. 2 Rev. Stat. 1909, sec. 6704. There can be but one homestead right as between husband and wife and that is in the husband. White v. Smith, 104 Mo. App. 199.. (2) The cases cited are not in point on the proposition announced. The cases are authority only on the proposition that the head of a family has a homestead in the equity of redemption. They do not say that the wife has any interest in the surplus from the sale. (3) The authorities cited by appellant only announce the principle that where property is sold under a deed of trust, the surplus proceeds go to the owner of the estate mortgaged or his heirs and not to his administrator, and that the owner may invest the surplus proceeds in another homestead. (4) No contract such as is alleged could have been proved under the issues before the court. The petition did not set it up, nor was any contract pleaded. The petition is drawn on another theory entirely, that is, that appellant has a vested interest in the equity in the homestead and a right to have the proceeds applied toward the acquisition of another homestead. An action on contract would have been a pure action at law. This evidence is incompetent also for the reason that it relates to a confidential communication between husband and wife which is prohibited by 2 Rev. Stat. 1909, sec. 6359. Where they are opposing parties they are competent witnesses as to all matters except communications from one to the other but not as to these. Moore v. Moore, 51 Mo. 118; Berlin v.

Berlin, 52 Mo. 151; Darrier v. Darrier, 58 Mo. 222; State v. Ulrich, 110 Mo. 350.

JOHNSON, J.—This is an action in equity for the enforcement of a right of homestead claimed by plaintiff. On final hearing the court dismissed the bill and rendered judgment against plaintiff for costs.

Plaintiff and defendant were married in 1894, and lived together as husband and wife in the city of Columbia until April, 1910, when defendant, apparently without just cause, abandoned plaintiff and went to live with his mother who also resides in Columbia. Prior to the abandonment the family occupied a homestead acquired by them in 1901. This property, the title to which was vested in the husband, was worth about $2,000, and was encumbered by a trust deed, executed and acknowledged by both husband and wife in 1908, to secure a debt of $600. When defendant abandoned plaintiff he left her in possession of the property which she continued to occupy as her homestead. At the solicitation of defendant the *cestui que trust*, after default, requested the trustee to advertise and sell the homestead under the trust deed. The request was complied with and the proceeds realized from the sale were sufficient to discharge all liens and expenses and leave a remainder of $917.76 in the hands of the trustee. The relief asked by plaintiff in her petition was that the trustee, who was joined with her husband as a party defendant, be ordered to pay this surplus into court and that the money be invested, by a commissioner to be appointed by the court, in another homestead for the use and benefit of plaintiff. Afterward the trustee, in obedience to an order of court, paid the money to the clerk of the court and was dismissed from the action. There are other facts in the record, but those stated will suffice for present purposes.

The result of the judgment of the circuit court, if we should allow it to stand, would be to give the proceeds of the sale of the homestead to the husband who has deliberately abandoned his wife, and to deprive the wife of any benefit of, or protection from, the homestead laws. We concede that since the title of the homestead was in the husband, he must be treated as the sole owner of the fee simple estate, subject, however, to the right of homestead. The right of homestead is purely a creature of statute and we turn to the statutes to ascertain whether or not they place an abandoned family completely at the mercy of its faithless head.

The homestead law first was enacted in this state in 1865 (section 1, p. 449, Gen. Stat. 1865) and provided that "the homestead of every housekeeper or head of a family, consisting of a dwelling-house and appurtenances, and the land used in connection therewith which is or shall be used by *such housekeeper or head of a family* as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution," etc.

This law placed no restrictions on the right of the husband to alienate or encumber the homestead and to correct the evil of according to the wife no power to veto an improvident disposition by the husband of the family asylum, the Legislature, in 1873, added the following amendment to the law: "And any married woman may file her claim to the tract or lot of land occupied or claimed by her and her husband, or by her, if abandoned by her husband, as a homestead; said claim shall set forth the tract or lot claimed, that she is the wife of the person in whose name the said tract or lot appears of record, and said claim shall be acknowledged by her before some officer authorized to take proof or acknowledgment of instruments of writing affecting real estate and be filed in the recorder's office and it shall be the duty of the

recorder to receive and record the same. After the filing of such claims, duly acknowledged, the husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever,'' etc.

Such was the state of the law at the time the decision by the Supreme Court in the case of Blandy v. Asher, 72 Mo. 27, was announced. It was there held that a married woman, abandoned by her husband and left in possession of the homestead, had a right of homestead of which she would not be deprived by subsequently obtaining a divorce from her husband. The court speaking through SHERWOOD, C. J. said, in part:

''No one can read with any degree of attention the provisions of our homestead act without reaching the same conclusion arrived at by most courts in construing similar legislative enactments, that such provisions were designed to mark out a course of enlightened public policy, whereby each family might secure a shelter, a place of refuge, against the storms of financial misfortune, which the greatest amount of human prudence and sagacity cannot always avert. Taking such a view, courts, for the most part, have held that these homestead laws, being of a liberal and beneficient nature, being designed to prevent pauperism and vagrancy and their consequent temptations to crime, should not be dwarfed, and their evident purpose thwarted by a narrow and illiberal construction. [Thompson on Homesteads, section 1, *et seq.*, and cases cited.] Such statutory exemptions respecting land, are not in derogation of common law, and consequently, not to be strictly construed, because the whole matter of the sale of real estate under *fi. fa.*, likewise its exemptions from such sale, is of purely statutory origin and regulation.''

It was found, however, that the provision requiring the wife, as a condition to the exercise of her veto

power, to execute, acknowledge and file for record a formal claim of her right of homestead, resulted in many hard instances of family deprivation owing to the neglect or disinclination of wives to preserve their right in a manner so formal, and to remedy this mischief, the Legislature, in 1895, again amended the law by dispensing with the formal claim and investing the wife with an unqualified veto power. In the accomplishment of this purpose the part relating to the claim was stricken from the statute and the provision pertaining to an abandoned wife being included in that part was stricken out with the rest. Consequently the statute, as it now stands, (section 6704, Rev. Stat. 1909), deals with the veto power of the wife in the following language: ''The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void: *Provided, however,* that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof.''

We think the omission of the law to contain a special reference to the right of an abandoned wife, left in possession, to preserve the homestead for the use and benefit of the family does not, in the light of the beneficent aims and purposes of the law, bespeak a legislative intent to outlaw the abandoned family. Rather do we attribute the omission to the idea, doubtless entertained by the Legislature, that the nature of the right of homestead is such that an abandoned family required no special mention in the law for its protection.

The language of the statute forbids the notion that the husband and father is the owner of any personal right or privilege. The privileges and benefits conferred are to the family, and the right of home-

stead rests in the husband and father as the head of the family, and not as an individual. As long as he remains the head of the family he is its representative—its trustee, so to speak—but when he abandons his headship, forsakes his family, he exiles himself from the right of homestead and the right devolves on the wife who succeeds him in family leadership. This idea is clearly expressed by the Supreme Court in Bushnell v. Loomis, 234 Mo. 371, where it is said:

"From this basis let us proceed to discuss the rights of the husband. To do so we must consider the purpose of the homestead acts. Such acts are founded upon a public policy. This public policy was not to protect the single and unmarried man, but on the contrary, was to protect the married man, *his wife and children*. The purpose was not to confer a privilege or a right upon the man as a man, but upon the man as a head of a family, and a member of an immediate family. If, therefore, we say that the wife has no *vested right* prior to the death of the husband, why should we say that the husband has a vested right of any character?"

To hold otherwise would be to say that a husband, by deserting his family and abandoning his homestead would subject the asylum of the family, so carefully safeguarded by the law, to the assaults of the husband's creditors. It is not the intention of the law to give an erring husband and father such malevolent power over the family. The fact that plaintiff joined in the execution of the trust deed under which the homestead was sold had no other effect than that of creating a lien on the property. The equity of redemption remained subject to the right of homestead and the surplus of the proceeds derived from the sale under the trust deed must be regarded as real estate impressed with such right. [Elstroth v. Young, 83 Mo. App. 253.] The prayer of the petition that a commissioner be appointed to invest the money in another

homestead for the use and benefit of plaintiff is granted. The title of such property should be placed in the name of the husband, subject to the homestead right. The judgment is reversed and the cause remanded with directions to the circuit court to proceed in accordance with the views expressed. All concur.