## W. J. WAINSCOTT, Respondent, v. MIKE HALEY, Appellant.

Kansas City Court of Appeals, December 21, 1914.

1. **CONTRACTS: Homesteads: Liquidated Damages.** Where one enters into a contract with another to exchange real property, both being homesteads, and stipulates for liquidated damages in the event either party fails to comply with the contract, and thereafter the wife of one of the parties, who had not signed the contract, refuses to execute a deed, the other party may recover the stipulated damages.

2. **——: Husband and Wife: Real Estate.** A husband cannot sell a homestead or any lands and make perfect title without his wife's consent. But neither of these conditions will relieve him of liability on his contract for the sale of such lands. This is a matter he should think of and provide against at the time he enters into his obligation.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

*A. J. King* and *D. M. Gibson* for appellant.

(1) "The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void. Provided, however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating, or in any other manner disposing of such homestead or any part thereof." R. S. 1909, sec. 6704; Bushnell v. Loomis, 234 Mo. 371; Williams v. Williams, 161 Mo. App. 249; 21 Cyc. 531; Macke v. Byrd, 131 Mo. 683. (2) "It is inconceivable to the judicial mind how a contract void, especially when it contravenes the public policy of the State where made, can ever form the basis of a suit recognizable either in equity or law." Statement of Judge Philips. Mundy v. Shellaberger, 161 Fed. Rep. 503.

*Scott & Bowker* for respondent.

(1) Where a husband contracts to convey land, a part of which constitutes a homestead but there is an excess over and above the homestead in the tract contracted to be conveyed, it is held that the husband is liable for damages for failure to comply with his contract, although the wife did not join in such contract. White v. Bates, 84 N. E. 906; 21 Cyc. 551; Weitzner et al. v. Thingstad, 56 N. W. 817; Meek v. Lange, 91 N. W. 695; Brewer v. Wall, 76 Am. Dec. 76; Curry v. Whitmore, 110 Mo. App. 204; Young v. Conrad, 119 Mo. App. 231; Fonda v. Colquitt, 165 S. W. 1195. (2) The damages sued for in this case, under the contract and testimony, were liquidated damages, and the respondent was entitled to recover them under the contract

and facts in this case. Morris v. Rathburn, 42 Mo. 594; White v. Bates, 84 N. E. 906; Menges v. Piano Co., 96 Mo. App. 283; Dyer v. Cowden, 168 Mo. App. 649.

JOHNSON, J.—This is an action to recover liquidated damages for the breach by defendant of an executory contract for the exchange of real property in the city of Nevada, owned by plaintiff and which was his homestead, for a farm of 160 acres in Vernon county, owned by defendant and occupied by him and his family as a homestead. The contract was not signed by the wife of either party but at the time set for the exchange of deeds plaintiff tendered a warranty deed executed and acknowledged by him and his wife, and demanded a like deed from defendant conveying the farm. The wife of defendant would not join in the execution of such deed and being unable to perform the contract, he repudiated it as void from the beginning. The contract contained the agreement "the parties hereunto do bind themselves, their heirs . . . each unto the other in the sum of one thousand dollars, which they hereby agree upon as liquidated damages, to be paid by the party failing to comply with his covenants contained in this agreement."

The land of each party is valued in the testimony of plaintiff at $10,000, and no attempt was made to prove any actual pecuniary loss to him from the refusal of defendant to perform the contract. At the close of the evidence of plaintiff the court refused defendant's request for a peremptory instruction and (defendant offering no testimony) directed a verdict for plaintiff in the sum of $850. Such verdict was returned and defendant appealed. The farm of defendant, in area, did not exceed that allowed by law as a homestead, but it did in value to the extent of $8500. [Sec. 6704, Rev. Stat. 1909.] Obviously the court in its peremptory instruction treated the stipulation in the contract for the assessment of damages in the event

of a breach by either party, not as a penalty, but as liquidated damages, and on the theory that the contract was void as to the value of the homestead interest, i. e., $1500, but good as to the remainder of the value of the farm, apportioned the agreed damages accordingly.

Defendant argues, first, that the contract was void *in toto,* and second, that since the two properties admittedly were equal in value, the agreement to liquidate the damages for a breach by either party at the sum of $1000, clearly was a provision for the imposition of a penalty.

The statute provides (Sec. 6704) "the husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void, provided, however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof."

The history of our homestead law which, in great part, was transplanted from Vermont (Macke v. Byrd, 131 Mo. 682) was reviewed by the Supreme Court in Bushnell v. Loomis, 234 Mo. 371, and by this court in Williams v. Williams, 161 Mo. App. 249, and need not be repeated here. The right of homestead is for the benefit of the family, and the head of the family in whom it inures has no other interest in it than that of the "head of a family and a member of an immediate family" (Bushnell v. Loomis, supra). The husband and father who owns the land, subject to the right of homestead, which he holds by virtue of his headship of the family, is not allowed to sell or alienate that right without the consent of the wife in whom the law invests the power to veto any such sale or alienation by refusing to join in the execution of a deed to give it effect.

"The wife and children of the owner of a homestead have no estate or vested interest in the property during his lifetime, and laws forbidding a husband to sell or encumber the homestead without the wife joining do not give her an estate but a mere veto power over his right to convey or mortgage." [Bushnell v. Loomis, supra, 1. c. 385.] The inchoate interest in the homestead possessed by the wife of the husband owner (Thorpe v. Thorpe, 70 Vt. 46) consists of the right to succeed him as the head of the family and owner of the homestead right upon his decease or abandonment of the family leaving it in possession and occupancy of the homestead. [Williams v. Williams, supra.]

The right of the husband owner to sell and convey the homestead, if his wife join in the deed, is absolute and, of course, is incompatible with the idea that the wife and children have any vested estate in the land or that the wife possesses any other power than that of interposing her veto to the consummation of his contract. The statute does not curtail his right as owner of the fee and of the homestead to sell and alienate both estates except to the extent, and to that extent only, that his contract to sell, mortgage or alienate, becomes null and void if the wife refuse to join in the execution of the deed or mortgage. If instead of so joining, she exercises her right of veto, specific performance of the husband's contract to sell cannot be enforced. The effect of the interposition of the veto is not to make the owner's contract for the sale of the land void *ab initio* but only to place an effectual check upon its specific performance.

In some of the cases to which we shall refer the thought seems to be uppermost that one of the beneficent objects of the homestead law is to prevent, or, at least, discourage both husband and wife from selling or attempting to sell the homestead which they have acquired. Such is not one of the purposes of the law

185MoApp4

and if it were, the result would be more harmful than beneficial, since frequently the necessities or interests of the family require the alienation of the homestead and the father and mother are left by the statute, as they should be, in the position of the sole judges of what were best to be done in the furtherance of the family fortunes. The father, as owner of the fee and head of the family, may contract to sell the homestead and his contract will be good *ab initio* and enforceable against the vendee if the mother approve it by joining in the execution of a deed pursuant to the contract. If, in the present case, the wife of defendant had manifested her approval of the contract by joining in the execution of a deed conveying the farm to plaintiff, would plaintiff be heard to repudiate the contract on the ground that she had not been a party to the contract and had not divested herself of her right to veto the sale? We have shown that she could not be thus divested except by joining in a deed of conveyance, and if the vendee could maintain such position, it would mean that all contracts for the sale of homesteads would be merely so much waste paper, since they could not be enforced against the vendee. Homestead laws are intended to be for the benefit, not the detriment, of the family, and our law bespeaks no intention of restricting the right of alienation in a way that would hamper the father and mother in their joint efforts to sell the homestead. The vendee in such contract could not successfully defend his breach thereof on the ground of its invalidity and neither may the vendor. The owner of the homestead who contracts to sell it and to invest the vendee with the entire estate binds himself to procure the execution of the deed by his wife, and while the law will not allow the specific performance of his contract to be enforced, it does not exonerate him from his contractual obligation to do as he solemnly agreed he would do, and there is no good reason in law or morals which would justify his ex-

emption of liability to respond in damages for his breach of contract. Such is the view of the law expressed by this court, speaking through ELLISON, J., in Curry v. Whitmore, 110 Mo. App. 204, where the defendant employed a real estate agent to sell his homestead and refused to pay the commission earned by the agent for the reason that his wife vetoed the sale. We rejected that reason as being unsound, saying: ''Neither can a husband sell any of his other lands and make perfect title without his wife's consent. But neither of these conditions will relieve him of liability on his contract for the sale of such lands. That is a matter he should think of and provide against at the time he enters into his obligation.''

We repeated the same doctrine in the later case of Young v. Ruhwedel, 119 Mo. App. 231. In a still later case, Mundy v. Shellaberger, 161 Fed. 503, the United States Court of Appeals for the Eighth Circuit, in an action for the specific performance of the husband's contract for the sale of the homestead, properly held that the exercise by the wife of the veto power granted her by the statutes of this State deprived the vendee of any right to a specific performance of the contract, but proceeded, upon reasoning at variance with that upon which we based our decisions in the Curry and Young cases, to hold that such contract could not be made the basis of an action for damages for nonperformance. The opinions of that high court are entitled to, and have, our deepest respect, but in this instance we are unable to agree with the reasoning of their decision which, if followed to its logical conclusion, would add no real benefit to families of owners of homesteads, and frequently would result in injury to them caused by the unnecessary restrictions it would impose upon the practical exercise of the lawful right of alienation which still exists as an element of the ownership of property, subject only to the right of veto the wife may exercise to the sale of the homestead.

In rendering judgment upon the basis that defendant's contract was void *in toto* as to the value of the homestead but valid as to the remainder, the learned trial court appears to have followed the views of the Supreme Court of Minnesota in Weitzner v. Thingstad, 55 Minn. 244, 56 N. W. 817, where, on the postulate that the husband's contract to sell the homestead without his wife joining therein was "not merely voidable but wholy void," it was held that since the husband was under no legal obligation to perform the contract it would be illogical (as doubtless it would be) to hold him liable in damages for the nonperformance of such contract, but that if the homestead were only a part of the land he undertook to convey, he could be held liable in damages for his refusal to perform that part of the contract on the theory that where a vendor is disabled from full performance, the vendee may elect to accept the partial performance he is able to make.

The weakness of this line of reasoning is that it rests upon the unsound premise that it is unlawful for a husband to contract to sell the homestead. The premise being wrong, the conclusion was wrong. So far as the question of liability of the contracting parties to answer in damages for a breach of the contract, is concerned, the contract was neither void nor voidable, in whole or in part. Each obligated himself to procure the execution of a deed by his wife. It is not unlawful for a person to contract to sell and convey something he does not own but expects to acquire, and if he unqualifiedly undertakes to do that which later he finds he cannot perform, he must and should suffer the liability the law imposes upon the contract breaker.

The remaining issue that the amount stipulated in the contract as liquidated damages should be construed as a penalty must also be decided against defendant. The question is one of law for the court (May v. Crawford, 150 Mo. 504; Dyer v. Cowden, 168 Mo. App. 649)

and where parties are *sui juris* and stand on equal footing, the courts will not interfere with their right to make their own contracts and will not assume that an agreement for the liquidation of damages in fact is for the imposition of a penalty, unless it clearly appears that the sum agreed upon is out of all reasonable proportion to any loss that could result from a breach of the contract. The tests usually applied by the courts in the solution of such questions are, *first,* the language employed in the contract; *second,* the subject-matter, and, *third,* the intention of the parties, the last being regarded as the most important consideration and where the enforcement of the intention expressed in the phraseology would work no absurdity or oppression, the parties must be presumed to have intended to say what they did say, and such intention should be given full effect. The rule thus is stated by WAGNER, J., in Morse v. Rathburn, 42 Mo. 594:

"It is perfectly competent for parties, when entering into an agreement, to avoid all controversy as to the amount of damages which may result from a violation of the contract, and to agree upon a fixed, certain and definite sum which shall be paid by the party in default. The damages in such a case are termed liquidated, stipulated, or stated damages. But in such cases great difficulty has been experienced in giving the contract a practical application and construction in determining whether the damages should be regarded as liquidated, or as a mere penalty only. The question is environed with doubt and contradiction and the decisions are conflicting and inharmonious. Mr. Sedgwick, the learned author of the Treatise on Damages, says: 'The subject-matter of the contract and the intention of the parties are the controlling guides. If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed

on. But, if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained and doing justice between the parties.' "

Each party valued his land at $10,000, and it is fair to assume that neither would have agreed to an exchange if he had not expected to reap some profit or advantage. Such is the dominating motive in all trades. Both must have anticipated the difficulties and uncertainties that would be encountered in proving the actual pecuniary loss one would suffer if the other breached the contract. The market values were not definitely fixed by law and would be ascertained by the triers of fact from variable and even contradictory evidentiary sources of information. Each party occupied the dual role of vendor and vendee. Vendors are prone to overvalue and vendees to undervalue. Notwithstanding the valuation each party allowed the other to place on the property he put into the trade, the issue of the quantum of damages would have to be determined by the test of the comparative market values and it was within the realm of reasonable probability that proof would show a greater difference in the market values of the respective properties than the sum agreed upon as liquidated damages. Such being the case we cannot say as a matter of law that the contractual estimate was unreasonable, or oppressive and, therefore, shall not interfere with the agreement the parties chose to make for themselves. The court should have rendered judgment for plaintiff for the whole of the stipulated sum but since plaintiff did not appeal and no prejudicial error was committed against defendant, the judgment should be affirmed.

It is so ordered. All concur.