260 S.W.2d 319 (1953)
CONTINENTAL ASSUR. CO.
v.
VAN CLEVE BLDG. & CONST. CO.
No. 28604.
St. Louis Court of Appeals. Missouri.
July 14, 1953.
Rehearing Denied September 11, 1953.
*320 J. E. Sigoloff and Charles S. Sigoloff, St. Louis, for appellant.
Harry A. Frank, St. Louis, for respondent.
HOUSER, Commissioner.
This is an action brought by Continental Assurance Company against Van Cleve Building & Construction Company to recover the sum of $1,660.55 plus interest, alleged to be due under the terms of a written contract. The cause was submitted to the court without the aid of a jury, and judgment was rendered for plaintiff for $1,750.22. After an unavailing motion for new trial defendant has perfected its appeal to this court.
The petition alleged that defendant requested plaintiff to make a loan to be secured by a deed of trust on certain real estate in the City of St. Louis on which defendant was erecting a building for lease to the United States Post Office Department; that after investigation plaintiff agreed to and issued its written commitment to make a loan to defendant in the sum of $290,000, subject to certain acts to be performed by defendant, including the completion of the building, the delivery of mortgage papers and other documents by April 18, 1951, and providing that the commitment be null and void unless accepted by the borrower on or before November 3, 1950; that the document contained the further provision that "standby interest" should be due on the commitment in the amount of $1,450 for the period November 3, 1950 to April 19, 1951 or any part thereof and should accrue at the rate of ½ of 1% per annum on the full amount of the commitment after the latter date if the commitment should be extended, "Standby interest to be payable upon termination of commitment, but is to be waived completely if the note and mortgage papers are delivered to us in accordance with the terms and conditions hereof;" that defendant accepted its terms by timely endorsement on the carbon copy of the document; that plaintiff at all times was ready to fulfill its engagement and had laid aside and designated funds therefor; that defendant failed to perform the acts enjoined upon it in the commitment, as a result of which on or about June 11, 1951 plaintiff notified defendant that the commitment had terminated, made demand for the sum due under the commitment agreement, and that defendant failed to pay the same.
Defendant's answer was a general denial.
At the trial plaintiff introduced the deposition of Stewart V. Van Berschot, assistant treasurer and manager of the mortgage and real estate department of plaintiff corporation, whose duty it was to approve mortgage loan submissions and recommend their purchase to the executive committee of the company, issue commitments, supervise the examination of papers and purchase of loans, and attend to collections in the general operation of the real estate and mortgage department. He testified that as an officer of plaintiff company he had business dealings with the attorney for defendant company, Edward C. Schneider, who, in the early part of October, furnished plaintiff certain preliminary information looking to the making of a loan on defendant's building then in the course of construction. In support of his application Mr. Schneider submitted a typewritten summary of information pertinent to the lender, together with copy of the proposal to lease between defendant and the United States Post Office, the balance sheet of defendant company, a survey covering the property, building plans, illumination layout plans, aerial photographs *321 of the property, the form of the note and deed of trust suggested by Mr. Schneider for the proposed mortgage loan, and an appraisement of the real estate. Upon receipt of this material Van Berschot and the other members of the department analyzed the material offered and made a recommendation to plaintiff's executive committee that "we approve the purchase of a mortgage in the amount of $290,000." On October 18, 1950 the executive committee of plaintiff company approved the purchase of a mortgage in that amount and on the terms referred to in the commitment, which was issued by the company on the same date. The commitment follows:
 "Continental Assurance
 310 S. Michigan Ave.
 Chicago 4, Illinois.
 "Mortgage Loan October 18, 1950
 Department Proposed: $290,-
 "Vancleve Building 000.00 First Mort&
 Construction gage
 Co. Borrowers: Van-
 St. Louis, Missouri cleve Building &
 Construction
 Company
 Property: 2200
 Vandeventer
 Avenue N E C
 Vandeventer &
 Cleveland Avenues,
 St, Louis,
 Missourias described
 in Post
 Office Department
 proposals to lease
 dated July 5, 1950
 and May 25, 1950
 between Post Office
 and Vancleve
 Building & Construction
 Company
"Gentlemen:
"Our Investment Committee has approved the above proposed loan for the AMOUNT
INDICATED BELOW, and in accordance with the following terms:
"Amount $290,000 Price 100 Term of Years 10 Type Conventional Interest Rate 3 3/4%
"Required monthly payments $2,558.65
"Prepayment PrivilegePrivilege to make total principal payments of $50,000, including required principal payments, in any one year with additional right to pay balance in full upon payment of premium of 2% on such payment. Additional principal payments to be in the amount of $500.00 or any multiple thereof. All additional payments and full payment to be made on interest paying dates subject to 30 days prior written notice.
"This commitment is subject to:
"1) Our receipt of and satisfaction with appraisal indicating a value of at least
$435,000.
"2) Completion of the improvements substantially in accordance with plans and specifications and acceptance of the property for transaction of business by the U. S. Post Office. Said acceptance to be evidenced by notice of completion and letter from Lessee stating that such building has been completed and that Lessee is in possession thereof pursuant to said lease or proposals to lease and indicating date on which lease term and rental commence.
"3) Borrowers shall pay all expenses in connection with completing and closing this loan, including escrow and title charges.
"4) This commitment is subject to delivery of all mortgage papers on or before April 18, 1951.
"This commitment is further subject to receipt by us or our escrow agent at St. Louis for delivery to us of the following:
"a.Completed final leases, if available, by U. S. Post Office and the Vancleve Building & Construction Company covering subject property and providing for an annual rental of $22,000 on the post office section and $18,380.44 on the garage section, said leases to be in full force and effect and fully and properly assigned to us by assignment and notice of assignment given to Lessee. If leases are not available, we are to receive affidavits from borrowers that proposals to lease dated July 5, 1950 on post office section and May 25, *322 1950 on garage section are still in full force and effect and that the original executed copies of the leases will be delivered to us as soon as possible with proper assignment and notice of assignment, as mentioned above, and in such event the proposals to lease are to be assigned and are to be in full force and effect without change or modification from the photostatic copies submitted.
"b.Principal note in a form approved by us and executed by the borrowers.
"c.Recorded deed of trust in form approved by us covering subject property.
"d.Title policy from an acceptable title company guaranteeing subject mortgage to be a valid first lien. All restrictions or exceptions, if any, shown on the title policy are subject to our approval. Reversionary provisions in restrictions will not be acceptable.
"e.Fire and extended coverage insurance covering subject property in an amount not less than $290,000 with a loss payable clause in our favor; said fire insurance policy shall be written by a company or companies acceptable to us.
"f.Survey showing improvements located on property and indicating no encroachments or violations.
"g.Waiver of defense by borrowers on our form (copies enclosed).
"If lease term and rental commence prior to date of first mortgage payment, then mortgage term and principal amount of the note are to be adjusted in proportion to such expired portion of the lease term and the principal payments that would have been due on the note during such expired term of the lease.
"This commitment is to be null and void unless borrower indicates acceptance by executing and returning the carbon copy of same on or before November 3rd.
"Standby interest shall be due on this commitment in the amount of $1,450 for the period November 3rd to April 19, 1951 or any part thereof and shall accrue at the rate of ½ of 1% per annum on the full amount of the commitment after April 19, 1951 if this commitment is extended. Said standby interest to be payable upon termination of commitment, but is to be waived completely if the note and mortgage papers are delivered to us in accordance with the terms and conditions hereof.
 "Yours very truly,
 "S. Van Berschot
 "Assistant Treasurer
 "Above terms accepted Vancleve Bldg.
 & Con. Co.
 "By  Evelyn Berin, Pres. Oct. 23,
 1950"
 (Corporate Seal)
Van Berschot testified that plaintiff was ready and willing at all times between October 18, 1950 and April 15, 1951 to advance and lend to defendant company the $290,000 proposed in the commitment of October 18, 1950 and that plaintiff earmarked and set aside $290,000 of its funds to lend to defendant in accordance with the commitment. The loan was never taken up and completed. After the expiration of the firm period of the commitment, on April 18, 1951, Van Berschot advised Schneider that plaintiff was still interested in the purchase of the mortgage and would extend the commitment, but subsequently Schneider advised that his principals had made other arrangements and that he was firmly convinced that the loan would not be delivered to plaintiff. On June 11, 1951 plaintiff wrote defendant terminating the commitment and requesting the remittance of standby interest in the amount of $1,450 as provided in the agreement. No such payment was received and although plaintiff was at all times ready and willing to fulfill the terms of its commitment defendant took no further action in connection with the acceptance of the proposal.
Defendant offered no evidence in the case.
Appellant raises three points: (1) error in the admission of oral evidence; (2) error in the finding of fact and conclusion of law that a binding contract existed between the parties; and (3) error in the finding of *323 fact and conclusion of law that plaintiff was entitled to recover standby interest from defendant.
(1) It is urged that the court erred in admitting parol evidence
(a) that the executive committee approved the purchase of the loan, whereas the loan commitment recited that the investment committee had approved the loan. If, as the evidence indicates, the loan commitment mistakenly named the particular committee of the corporation which in fact approved the loan, the proper name of the committee could be supplied by parol evidence without doing violence to the parol evidence rule. A similar exception is to be found in those cases in which it is held that a mistake or variance in the name of the grantee in a deed may be rectified by the admission of parol evidence to show the real party intended. Settles v. Scott, Mo. Sup., 211 S.W. 35; 32 C.J.S., Evidence, § 995, p. 969. In addition, the slight variance between the writing and the proof related to a wholly immaterial matter. Which particular committee gave the approval was a matter of complete indifference. The only question of authority involved was the authority of Van Berschot to act for the corporation, which we will consider hereafter. Finally, the oral evidence sustained rather than defeated the operation of the instrument, which distinguishes the case from Bank of Mountain View v. Winebrenner, 355 Mo. 79, 195 S.W.2d 486, cited by appellant, in which the oral evidence, if admitted, would have flatly contradicted the terms of the written instrument. The point is not well taken.
(b) of an agreement by plaintiff to purchase the loan in question. Appellant claims that oral evidence that the committee had approved "the purchase of the mortgage" varied the written statement that the committee had approved "the above proposed loan." This is a distinction without a difference and the assignment is not substantial.
(c) of the earmarking and setting aside of funds to consummate the alleged loan. It is urged that this evidence added to the written instrument terms not therein included; that the loan commitment did not require plaintiff to set aside any funds for the making of the loan, and that in so doing plaintiff was performing a purely voluntary act for its own benefit which could not give rise to liability on the part of defendant. As we view it, the earmarking or setting aside of funds was neither required by the written instrument nor a prerequisite to liability thereupon. This evidence was not introduced for the purpose of establishing the provisions of the commitment or of supplementing it with new and additional terms, nor was it introduced in order to show compliance with the requirements of the commitment. It was admissible, however, for the purpose of showing the willingness, ability and readiness of plaintiff to perform its agreement.
(d) of the agreement to pay a standby interest "fee." True enough, the word "fee" is not used in the agreement but there was no error in the admission of this testimony. The characterization of the payment as a "fee" did not bind defendant or make it a fee. As we said in Zeppenfeld v. Morgan, Mo.App., 185 S.W.2d 898, loc. cit. 904: "Of course, the mere calling a sum liquidated damages is not conclusive of its character." The point is without merit.
(2) It is next urged that the trial court erred in its finding of fact and conclusion of law that a binding contract existed between the parties. Appellant contends that there was no evidence that the investment committee had authority to approve a loan to defendant or that Van Berschot had authority to issue a commitment based thereon. The evidence showed that plaintiff corporation is a life insurance company; that it had funds to invest; that it had a mortgage and real estate department which was created for the purpose of the investment of its funds; that Van Berschot was the manager in charge of that department and that he was also assistant treasurer of the corporation. There was no necessity of any further showing of authority on the part of Van Berschot to act as the agent of the corporation in the making of the loan commitment. Such a highly placed official and department manager has implied authority to do any act in behalf of the corporation which is usual and necessary in *324 the ordinary course of the company's business. Forbes Tea & Coffee Co. v. Baltimore Bank, 345 Mo. 1151, 139 S.W.2d 507, loc. cit. 509.
Appellant, however, urges that the contract was unilateral in that it did not obligate plaintiff to make the loan, and consequently it is not enforceable against defendant. Defendant applied to plaintiff for a loan. Plaintiff made a considerable investigation and agreed to make the loan. One of the provisions of the commitment was that a certain sum of money should be due and payable if the commitment was terminated and the loan not consummated. To this defendant agreed. Under these circumstances it was too late for defendant to set up want of mutuality. Deming Inv. Co. v. Wasson, Mo.App., 192 S.W. 764, loc. cit. 766.
(3) Finally, it is urged that the court erred in its finding of fact and conclusion of law that plaintiff was entitled to recover "standby interest" from defendant. Appellant construes "standby interest," as that language is used in the loan commitment, to mean "statutory interest," which is provided for in Sections 408.020 and 408.030 RSMo 1949, V.A.M.S. The argument is that there must be statutory authority in order to collect statutory interest, and that there is no statutory authority to charge or collect this type of interest. Appellant claims that none of the situations provided for in the statute is present in the case at bar; that there is nothing but an agreement to make a loan; that no money was actually advanced; that plaintiff had the complete use of its funds until called upon to perform its agreement to lend them and that it is not entitled to charge defendant with interest thereon for the reason that interest is a consideration paid for the use of money or for forbearance in demanding the same when due. Appellant cites Maryland Casualty Co. v. Omaha Electric Light & Power Co., 8 Cir., 157 F. 514, for the proposition that so long as one retains money and has the use thereof he cannot charge for interest thereon.
We are unable to agree with appellant. This contention is based upon an invalid assumption, namely, that "standby interest" is synonymous with "statutory interest." Considering the record as a whole, and reading the loan commitment in connection with the surrounding circumstances, it is obvious that the "standby interest" provided for in the commitment was nothing more or less than a provision for liquidated damages to be paid to plaintiff corporation if, after the plaintiff had gone to the expense, time and trouble of invewstigating the loan application and had committed itself to lend this substantial sum, the applicant should abandon the application and fail to consummate the transaction. Plaintiff stood to make a valuable and profitable loan whereby it would receive 3 3/4% interest over a considerable period of time on what it regarded as sound security. By defendant's failure to complete the loan plaintiff not only lost any benefit from the effort and trouble it expended in connection with the investigation but also was deprived of the interest which would have been yielded up during the term of the loan. While the loan commitment did not specifically provide that the amount constituted liquidated damages, it is apparent to us that that was its object and purpose, and it will be enforced as such. See Deming Inv. Co. v. Wasson, supra; Wainscott v. Haley, 185 Mo.App. 45, 171 S.W. 983; Zeppenfeld v. Morgan, supra. As stated in the last cited case, 185 S.W.2d loc. cit. 904: "Ordinarily if it appears that the parties in good faith agreed upon a sum as the damages which would probably ensue if the contract should be breached, the stipulation is for liquidated damages, provided the agreement is reasonable." It is therefore immaterial that plaintiff at all times had the complete use of the monies involved.
No error appearing, it is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., ANDERSON, J., and DEW, Special Judge, concur.