82 N.J. Super. 75 (1964)
196 A.2d 682
SIDNEY PALEY AND ALLEN TUCKER, PLAINTIFFS-APPELLANTS,
v.
BARTON SAVINGS AND LOAN ASSOCIATION, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1963.
Decided January 3, 1964.
*78 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Joseph Gordon argued the cause for appellants (Messrs. Gordon & Kanengiser, attorneys).
Mr. Roger H. McGlynn argued the cause for respondent (Messrs. McGlynn, Stein & McGlynn, attorneys).
*79 The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by plaintiffs from a denial of their motion for summary judgment, and from the final judgment entered in favor of defendant following the granting of its cross-motion for summary judgment.
In April 1960 Villa Fina Development Corporation (Villa Fina), a corporation of Puerto Rico, planned to develop a large tract of land in San Juan, Puerto Rico, upon which it intended to construct many one-family dwellings. To further that purpose Villa Fina on April 20, 1960 entered into a written purchase commitment agreement with defendant whereby defendant obligated itself, for a period of one year, to hold $1,000,000 available to purchase mortgages which Villa Fina intended to obtain from purchasers of the homes it anticipated building.
Plaintiffs are assignees of Villa Fina's interest in the foregoing agreement.
Under the terms of the purchase commitment defendant agreed to accept from Villa Fina
"* * * by assignment to us $1,000,000. par amount of FHA mortgage loans insured by the Federal Housing Commissioner pursuant to the provisions of Title II, Section 203b of the National Housing Act, as amended, bearing interest at 5 3/4% per annum, with such maturity dates and such minimum down payments as may be provided in said Title II, Section 203b of the National Housing Act and the regulations of the Federal Housing Administration."
The agreement set forth further conditions with which the mortgages would be required to comply before defendant would be obligated to purchase them. Defendant was to purchase these mortgage loans at discounts of 5 to 7% of the unpaid principal balances, depending upon the interest rate and time period over which the principal would be paid.
Villa Fina had contemplated that the possession of such a commitment would enable it to secure local short-term loans with which it could finance the construction of the homes. Villa Fina paid $10,000 as consideration for the obligation *80 which defendant undertook under the terms of the purchase commitment, as follows:
"You [Villa Fina] are to pay us [defendant] on acceptance of this commitment a non refundable fee equal to one percent (1%) of the amount of this commitment as stated in paragraph 1 above, which shall be ours as the consideration for our making this commitment. It shall constitute absolute and unconditional payment to us, without right or claim against the same, and without right of recovery of the whole or any part thereof, in any event whatsoever." (Emphasis added)
Villa Fina never launched the development project. As a result, no homes were built and, of course, no mortgages were offered to defendant. The purchase commitment expired on April 20, 1961, the present plaintiffs having unsuccessfully sought an extension of six months. There was no contradiction of defendant's assertion that it was ready at all times within the contract period to meet this obligation under the agreement.
On April 25, 1961 these plaintiffs filed a complaint against defendant, demanding judgment in the amount of $10,000 on the grounds that the purchase commitment was violative of the laws of New Jersey and Federal administrative regulations, was illusory and unenforceable, the $10,000 paid by Villa Fina was a usurious charge, and the retention of that money constituted unjust enrichment to defendant. As noted above, both parties moved for summary judgment; plaintiffs' motion was denied and that of defendant was granted.
On this appeal plaintiffs set forth various contentions which they argue demonstrate their right to summary judgment. Several of these arguments can be disposed of summarily. For example, the assertion that the purchase commitment violates N.J.S.A. 17:12A-27(10) is manifestly erroneous. That statutory provision allows a savings and loan institution to take "from its members" a premium for the "privilege of loan or acquisition of real estate." Plaintiffs contend that this limits the charging of such premiums to members only, and that since Villa Fina was not a member, no such charge could be made. Cf. Pilot Building and Loan *81 Ass'n v. Chieff, 1 N.J. Misc. 547, 548, 127 A. 526 (Sup. Ct. 1923), affirmed 101 N.J.L. 226 (E. & A. 1925). This transaction, however, was not a loan; it was an agreement to buy mortgages. The payment made by Villa Fina was consideration for the purchase obligation to which defendant subjected itself. N.J.S.A. 17:12A-27(10) is therefore inapplicable.
Similarly, plaintiffs' argument that "the retention by the defendant of the money paid to it is usurious" misconceives the nature of the agreement in question. Usury involves a charge for the use of money which exceeds the lawful rate of interest. Hildinger v. Bishop, 126 N.J. Eq. 334, 339 (Ch. 1939). Since no loan of money from defendant to Villa Fina existed here, usury could not be involved. See Altman v. Altman, 8 N.J. Super. 301, 309 (App. Div. 1950).
Nor can it be said that the fee of $10,000 violates the maximum charge permitted by FHA regulations, for the regulation cited by plaintiffs refers to what a mortgagee may charge. The mortgagee was to have been Villa Fina (or perhaps others). Defendant was merely to have purchased whatever mortgages Villa Fina obtained which complied with the conditions set forth in the agreement.
Plaintiffs further contend that one of the clauses in the purchase commitment, which expressly stated that defendant would not purchase any loans "commonly known as `minority group' loans," violates FHA regulations, is contrary to public policy, and therefore the entire agreement is "void and unenforceable." This argument is without merit. If Villa Fina had tendered mortgages which defendant had rejected on the ground that they were "minority group" loans, the question of the validity of the clause and its effect upon the validity of the entire agreement would then be properly before us. Since no such situation has occurred we find it unnecessary to decide whether the clause in question violates public policy. However, assuming arguendo that the provision in question did offend public policy and that the entire *82 agreement was therefore illegal, plaintiffs still could not prevail. The law will not ordinarily assist either party to an illegal agreement. This was not an executory agreement, but one wholly executed by both sides. In the absence of some overriding effect upon the public interest, which this agreement does not involve (particularly in view of its never having been acted upon), the law will leave the parties to such an executed agreement where it finds them. See Cameron v. International Alliance of Theatrical Stage Employees and Moving Picture Operators of U.S. and Canada, Local Union No. 384, 118 N.J. Eq. 11, 20 (E. & A. 1935).
Plaintiffs further contend that the terms of the purchase commitment are so vague, indefinite and uncertain as to make it illusory and therefore unenforceable. Plaintiffs assert that the term "minority group" loans has no commonly understood meaning, and that defendant could therefore reject any mortgage it desired on the ground that it considered it to be a minority group loan. Plaintiffs also point out that under the terms of the agreement defendant retained the right to refuse to purchase any mortgage which failed to receive its counsel's "approval as to legal requirements," or where the credit standing of a mortgagor did not meet with its approval. It was agreed by the parties that any such decision of the defendant or its counsel would be final.
First, this is not an action to enforce a contract, but rather to repudiate one, and to have restitution of what was paid thereunder. Plaintiffs' assignor paid money, which it understood to be nonrefundable, for a commitment by defendant; Villa Fina received that commitment but never used it. There is no allegation of fraud, mistake, duress or undue influence in entering into this agreement. Plaintiffs do not cite us any authority for the proposition that a party to an agreement may obtain restitution on the ground that the agreement was illusory, where the other party has performed.
Second, and in any event, we do not find this agreement to be so vague as to require a determination that it is *83 unenforceable. The mere fact that certain terms of an agreement may require construction by a court does not establish that either of the parties to that agreement is without any obligation thereunder. If it is at all possible, a court will attach a sufficiently definite meaning to the terms of a bargain to make it enforceable, see Goldberg v. Commercial Union Ins. Co. of N.Y., 78 N.J. Super. 183, 190 (App. Div. 1963), and ambiguous words would be interpreted most strongly against the party who used them in cases of fair doubt as to their scope, see Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 519-520 (App. Div. 1961), affirmed 36 N.J. 532 (1962). See also 1 Williston, Contracts (3d ed., Jaeger, 1957), § 37, pp. 110-111. The significant consideration here is whether or not the parties intended to enter into a binding agreement. It is manifest that such an intention was present on the part of both parties. As stated by Professor Corbin,
"If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left." 1 Corbin, Contracts, § 95, p. 400 (1963).
Thus, any terms of the purchase commitment which were dependent upon defendant's satisfaction with the details of the mortgage to be offered it would, in the event of a dispute, be construed by the court to be subject to the implied condition that the defendant's decision be reasonable under the circumstances. Compare Tessmar v. Grosner, 23 N.J. 193, 201 (1957).
In Boston Road Shopping Center v. Teachers Insurance & Annuity Ass'n, 13 A.D.2d 106, 213 N.Y.S.2d 522 (App. Div. 1961), affirmed 11 N.Y.2d 831, 227 N.Y.S.2d 444, 182 N.E.2d 116 (Ct. App. 1962), plaintiff and defendant had entered into a contract whereby the latter agreed to lend the former $1,100,000 for the construction of a shopping center. Plaintiff paid defendant $22,000, which was to be *84 repaid if the loan was actually made, but which would not have to be returned by defendant if plaintiff failed to comply with all the terms and conditions of the agreement. Although it was a condition of the agreement that defendant's attorneys had the final decision as to whether the leases plaintiff intended to obtain from lessees of the shopping center complied with the necessary requirements, the New York Appellate Division held that the agreement was not illusory because it was understood that such decisions would have to be reasonable or at least made in good faith. In that case plaintiff failed to obtain sufficient tenants necessary to carry on a shopping center and eventually abandoned the project. It sued for the return of the $22,000 it had paid for the commitment by defendant. The trial court's directed verdict for plaintiff was reversed by the Appellate Division and judgment was entered for defendant. See also Chambers & Co. v. Equitable Life Assurance Society, 224 F.2d 338, 343-344 (5 Cir. 1955), where the court, in deciding another question, recognized the general validity of such agreements.
The last of plaintiffs' contentions for the propriety of entering summary judgment in their favor, that the $10,000 was an unconscionable charge and represents an unjust enrichment to defendant, cannot be sustained. There was no unjust enrichment to defendant because it performed its obligation in return for a reasonable fee. It agreed to have $1,000,000 ready to purchase from Villa Fina any mortgages which complied with the terms of the agreement, and it kept that agreement. The failure of Villa Fina to obtain any mortgages was not due to any fault on the part of defendant. The $10,000 charge was by no means unconscionable. It constituted 1% of the sum which defendant was obligated to hold ready for a period of one year. In the Boston Road Shopping Center case, supra, it was held that a charge equal to 1 1/2% of the sum to be held available for a period of 15 months was not unreasonable.
Plaintiffs raise two final arguments which they contend demonstrate that the trial court's decision to grant *85 summary judgment in favor of defendant should be reversed. It is first argued that "it was erroneous to take judicial notice of the purported custom relative to the commitment fee." This argument stems from the following statement made by the trial court in his letter opinion granting the defendant's motion for summary judgment: "The fee involved is a commitment fee. It is not barred by any statute pleaded or of which I have knowledge. There is no public policy against such a fee. It is so standard in business and finance, that I could take judicial notice that such a practice exists." Plaintiffs claim that an agreement of the nature we are now considering is so individually tailored to the requirements of the parties, and therefore lacking in common and universal terms and purposes, that it cannot be the subject of judicial notice. We are not at all certain that the language quoted above indicates that the judge in fact took judicial notice as plaintiffs claim. In any event, since the conclusion of the trial court is supportable on the grounds already discussed in this opinion, this question need not be decided.
Plaintiffs' final point is that the judge erred in granting defendant's motion for summary judgment "without a full trial of the issue of damages sustained by the defendant." Obviously, this argument has no substance. This is not an action for damages but rather a groundless suit for restitution of a payment made under a fully executed agreement. Compare Continental Assur. Co. v. Van Cleeve Bldg. & Const. Co., 260 S.W.2d 319, 324 (Mo. Ct. App. 1953), where a stand-by charge was considered by the court to be the equivalent of liquidated damages. In that case the fee was held to be proper notwithstanding the fact that no money was ever advanced under the terms of the agreement.
No genuine issue as to any material fact was raised before the trial court. Defendant was entitled to judgment as a matter of law, and the entry of summary judgment in its favor was proper. R.R. 4:58-3; see Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
Affirmed.