GOLDMAN, ᴇᴛ ᴀʟ. *v.* CONNECTICUT GENERAL
LIFE INSURANCE COMPANY

[No. 429, September Term, 1967.]

*Decided December 4, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Abel J. Merrill* and *Donald N. Rothman,* with whom were *David P. Gordon* and *Gordon, Feinblatt & Rothman* on the brief, for appellants.

*Franklin G. Allen,* with whom were *Piper & Marbury* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Melvyn Goldman and Philip Klein, assignees of Greenspring Mall, Inc. (the individual appellants and the assignor corporation are collectively referred to as "Greenspring" in this opinion) have appealed from a judgment for costs entered by the Superior Court of Baltimore City in favor of the appellee, Connecticut General Life Insurance Company (Connecticut).

On 14 September 1964, Greenspring, which proposed to build an "air-conditioned enclosed mall-type shopping center," entered into a commitment agreement with Connecticut which was designed to furnish the permanent financing of the project. The agreement provided that Connecticut would lend to Greenspring and Greenspring would borrow from Connecticut a total of $1,700,000. $1,400,000 was to be borrowed on or before 1 March 1966, and an additional disbursement of $300,000 would be made by the lender within six months of the first borrowing, if Greenspring met conditions with respect to leasing to Connecticut's satisfaction. By its terms, the commitment expired on 1 July 1966, unless extended by Connecticut. The commitment agreement further provided:

> "19. *Consideration for commitment*
>
> "In consideration of the expenses incurred by Lender in processing this loan, for the issuance of this commitment, and for the holding of funds for disburse-

ment at a future date, the Borrower agrees that upon acceptance of this commitment, it shall become binding and that the loan will be closed in accordance with the provisions hereof.

"This commitment, however, shall not become effective until such time as the Lender has received in addition to the acceptance of this commitment a fee in the amount of $17,000. The Lender agrees to refund this fee if and when the loan is closed and the proceeds have been disbursed. The payment of this fee in no way lessens the Borrower's obligation to close the loan in accordance with the terms of this commitment."

Greenspring paid the $17,000 in October, 1964.

In December of 1964, Greenspring decided not to pursue its original plan of constructing an enclosed mall shopping center and chose, instead, to construct a center of the conventional type. It notified Connecticut of its decision and of its intention not to take down funds under the commitment, and demanded the return of the $17,000 payment. On 21 December 1965, after Connecticut had refused to return the $17,000, the appellants filed suit seeking a declaratory judgment:

"a. That none of the terms of the contract authorize [Connecticut] to withhold the $17,000.00 deposit from [Greenspring].

"b. That the withholding of the $17,000.00 from [Greenspring] imposes a penalty.

"c. That [Connecticut] is therefore wrongfully withholding the $17,000.00 from [Greenspring].

"d. That [Greenspring is] entitled to a return of the $17,000.00 less the damages actually sustained by [Connecticut], if any, as the result of [Greenspring's] failure to borrow the $1,700,000.00."

Connecticut answered, and after some preliminary sparring over interrogatories, moved for a partial summary judgment with respect to the relief prayed in (a) as permitted by Maryland Rule 610 a 1. When this was granted, Connecticut moved for a full summary judgment, which was also granted. Judgment was entered for Connecticut and Greenspring appealed.

The parties agree that this case must turn on the nature of the $17,000 payment, which both of them concede was not a payment in part performance of the contract. Greenspring argues that the payment was either a penalty, a deposit to secure performance or in the nature of liquidated damages, and was, in any case, refundable. If it was a penalty, Greenspring says, it may not be retained in its entirety, since Connecticut can only recover actual damages; if it was a deposit to guarantee performance, its validity is governed by the rules relating to liquidated damages, and if it is reasonably compensatory for the damages sustained, it is in the nature of liquidated damages, and may be retained by Connecticut. In support of these contentions, Greenspring cites *Willson v. Mayor & C.C. of Balto.*, 83 Md. 203, 34 A. 774 (1896), and also relies on Restatement, *Contracts* § 339 at 552 (1932); *H. J. McGrath Co. v. Wisner*, 189 Md. 260, 55 A. 2d 793 (1947). Finally, Greenspring says, Connecticut made no segregation of the funds to be loaned and cannot prove the extent to which it has been prejudiced by the breach.

Connecticut, on the other hand, maintains that $17,000 was the fee exacted by Connecticut as compensation for its agreement to stand ready to make the loan and to reimburse it for the expenses which it would incur unnecessarily if the transaction were never consummated. It adds that the charge was not an unreasonable one; that proof of actual damages would be extraordinarily difficult, and that in any event, its right to retain the fee should not be conditioned on proof of actual damage. In support of its position, Connecticut relies on cases from other jurisdictions upholding the right of a lender to retain a commitment fee when the borrower fails to avail himself of the lender's undertaking: *Regional Enterprises, Inc. v. Teachers Ins. & Annuity Ass'n,* 352 F. 2d 768 (9th Cir. 1965); *Chambers & Co. v. Equitable Life Assurance Soc.,* 224 F. 2d 338 (5th Cir. 1955); *Paley v. Barton Savings & Loan Ass'n,* 82 N.J.Super. 75, 196 A. 2d 682 (1964), *aff'd* 41 N. J. 602, 198 A. 2d 446 (1964); *Boston Road Shopping Center v. Teachers Ins. & Annuity Ass'n,* 13 App.Div.2d 106, 213 N.Y.S.2d 522 (1961), *aff'd* 11 N.Y.2d 831, 182 N.E.2d 116 (1962); *Continental Assurance Co. v. Van Cleve Bldg. &*

*Const. Co.,* 260 S.W.2d 319 (Ct. App. Mo. 1953). In support of its contention that the fee was a reasonable one, Connecticut points out that in *Regional Enterprises* and *Boston Road,* the commitment fee was 2% of the amount of the loan; in *Paley,* 1%; and in *Chambers,* ¼ of 1% of the loan each year from the date of the commitment to its expiration.

The facts in *Boston Road Shopping Center v. Teachers Ins. & Annuity Ass'n, supra,* are remarkably similar to those in the case before us. There the lender committed itself to lend the borrower $1,100,000 at a future date, and the commitment agreement was made "in consideration" of a payment of $22,000 which was to be returned to the borrower if and when all the terms and conditions of the agreement were met. This fee amounted to 2% [1] of the amount of the loan. The contract provided that the $22,000 fee paid to the lender was to be returned to the borrower at the closing of the loan, and further stipulated that in the event of the borrower's failure to comply with the terms of the agreement, "* * * then the amount so paid as consideration for our agreements shall be retained by us [the lender] in full satisfaction for our entering this agreement and holding ourselves ready and willing to make the loan within the aforesaid time * * *." By an amendment to the contract, the lender agreed to refund what it referred to as the "standby deposit" in the event that it found unacceptable any of the leases with eight major prospective tenants named in the agreement.

The borrower failed in his efforts to negotiate leases with the tenants, abandoned the project, demanded a return of the commitment fee, and instituted suit. The court concluded that the fee could be retained by the lender since it was "in the nature of liquidated damages" and not unreasonable.

In today's world, the commitment fee has become a fact of financial life. Most large projects are financed under agree-

---

1. The Appellate Division, which regarded this as a stand-by deposit in the nature of liquidated damages, concluded that this represented an effective rate of 1½% for the 15 months during which the agreement was in force.

ments [2] substantially similar to the one entered into between Greenspring and Connecticut. *Boston Road Shopping Center v. Teachers Ins. & Annuity Ass'n, supra,* 213 N.Y.S.2d at 526; *Continental Assurance Co. v. Van Cleve Bldg. & Const. Co., supra,* 260 S.W.2d at 321-22. The commitment fees are substantial, but are usually stated as a small percentage of the amount ultimately to be loaned. The courts, in holding that the fees were non-refundable in the event that the project is abandoned or that the borrower fails to take down the funds, have supported their conclusions by finding that the fee was intended to constitute liquidated damages, as in *Boston Road;* as a fee for the commitment, as in *Regional Enterprises* and *Paley;* as a stand-by fee, as in *Chambers;* or as stand-by interest, as in *Continental Assurance.*

We approach the problem somewhat differently. It will be recalled that in the case before us, the contract described the $17,000 as "a fee" and that the effectiveness of the commitment was conditioned upon the payment of it. The agreement provided that the fee would be refunded when the loan was closed, but neither made reference to the disposition to be made of the fee if the transaction was never consummated, nor described the amount as liquidated damages. Connecticut does not claim that it made any segregation of its funds to cover the commitment, but says that it has been put to expense, which cannot

---

2. Sherman, *Mortgage and Real Estate Investment Guide* (30th Ed. 1968) at 286 A, 286 C includes the following paragraphs in a suggested form of mortgage loan commitment letter:

"1. There shall be paid to us [the lender] in cash with the acceptance hereof the sum of $      as a fee for the issuance of this commitment.

"2. * * * *Upon and as additional consideration for the closing* of the permanent loan in accordance with the terms and conditions hereof, we agree to pay to * * * the borrower an amount equal to the commitment fee.

* * * *

"10. * * * If the commitment is terminated in any manner as aforesaid [borrower's insolvency or failure to comply with conditions], the commitment fee shall be considered as fully earned by us [the lender] and as a measure of liquidated damages for the breach of the commitment agreement * * *."

be calculated with any precision. It might also have argued that the fee was intended to protect the lender against the uncertainties of the money market, since a borrower may go elsewhere if interest rates soften.[3]

Under the facts of this case, we view the payment made by Greenspring to Connecticut as the consideration paid for Connecticut's commitment letter. It is closely analogous to the payment made for an option,[4] which has been defined as "a contract to keep an offer open," 1 Williston, *Contracts* § 61 A at 198 (3d Ed. 1957); *Warner Bros. Theatres, Inc. v. Proffitt,* 329 Pa. 316, 198 A. 56 (1938). This is precisely what Connecticut contracted to do. Assuming that Greenspring performed, Connecticut bound itself to stand ready for a period of about 18 months (which could be extended to 22 months under certain circumstances) to lend Greenspring $1,400,000 and to lend an additional $300,000 at a time which might be as distant as two years or more. The conditions of the loan, including a term of 23 years and two months, and an interest rate of 6%, were immutably fixed. That this continuing commitment had value [5] to a borrower cannot be questioned, since it was clearly worth $17,000 to Greenspring on 24 September 1964.

Greenspring is quite correct when it says that if there is doubt whether a contract provides for liquidated damages or a penalty, the provision will be construed as a penalty, *Willson v. Mayor & C.C. of Balto., supra; Geiger v. Western Maryland R.R.,* 41 Md. 4 (1874), and that a payment to guarantee performance may be treated as liquidated damages in an appropriate case, even though the contract makes no mention of liquidated damages. *Siler v. Marshall,* 251 Md. 342, 247 A. 2d 385 (1968), *Alois v. Waldman,* 219 Md. 369, 377, 149 A. 2d 406 (1959). As we see the case, however, the fee was neither

---

**3.** For an example, see *Regional Enterprises v. Teachers Ins. & Annuity Ass'n, supra,* 352 F. 2d at 776, where the borrower sacrificed a fee of $40,000 but saved $500,000 in interest payments.

**4.** Which frequently provides that the payment may be a credit against the purchase price, if the option is exercised.

**5.** Such a commitment is usually a condition precedent to obtaining funds for construction

582

liquidated damages, nor a penalty, nor a guaranty, but was consideration paid for Connecticut's undertaking to perform.

*H. J. McGrath Co. v. Wisner, supra; Mount Airy Milling & Grain Co. v. Runkles,* 118 Md. 371, 84 A. 533 (1912); and *Willson v. Mayor & C.C. of Balto., supra,* on which Greenspring heavily relies, can all be similarly distinguished. Even if we assume, *arguendo,* that the parties intended that the payment should be regarded as liquidated damages, it will not be regarded as a penalty if the amount is a reasonable forecast of just compensation at the time the contract was made, *Hammaker v. Schleigh,* 157 Md. 652, 667, 147 A. 790 (1929); 5 Williston, *Contracts* § 778 at 694 (3d Ed. 1957), and if actual damages are incapable or very difficult of accurate estimation. *H. J. McGrath Co. v. Wisner, supra,* 189 Md. at 265; Restatement, *Contracts* § 339 at 552 (1932). While we think that our reasons provide firmer support for the result reached below, we are not inclined to disturb the lower court's finding that the fee was reasonable and that actual damages were difficult of ascertainment.

We have not considered the points made by Greenspring and Connecticut with respect to a provision in the agreement providing for the payment of the fee which would have been charged had Greenspring delayed performance beyond 1 March 1966, since we do not regard this as relevant to the issue presented.

*Judgment affirmed; costs to be paid
by appellants.*