John W. TESTERMAN et ux., Appellants,

v.

HOME BENEFICIAL LIFE INS. CO. and Park National Bank, Appellees.

Court of Appeals of Tennessee, Eastern Section.

Nov. 26, 1974.

Certiorari Denied by Supreme Court April 14, 1975.

Harold B. Stone, Knoxville, for appellants.

Foster D. Arnett and Arnett, Draper & Hagood, Knoxville, for appellees.

## OPINION

GODDARD, Judge.

In the autumn of 1971 John W. Testerman, who together with his wife are Plaintiffs-Appellants, and who will hereafter be referred to as Plaintiff, was seeking a permanent loan in connection with property he was developing on Chesire Drive in Knoxville, which was to be known as Windover Apartment Project. Plaintiff is a real estate developer in Knoxville, who owns or controls over 600 apartment units in the Knoxville area, and who holds Bachelor of Arts and Bachelor of Law degrees from the University of Tennessee.

He had hoped initially to be able to borrow some $3,000,000 to finance the entire development. However, because of the condition of the money market it was deemed more feasible to build and finance the project in phases. Apparently the financing of phase one had been solved, because he was attempting to secure a permanent commitment in connection with phase two. In furtherance thereof he executed a contract dated December 2, 1971 with Provident Trust Company of Nashville, with whom he had been dealing since 1965, constituting it his agent for the purpose of locating a loan in the amount of $1,500,000 under terms as detailed in the contract. Thereafter, a commitment was secured from Home Beneficial Life Insurance Company, Defendant-Appellee, which bound the Defendant to lend the Plaintiff the sum of $1,500,000, the disbursements for which were to be made between January 1 and August 21, 1973. The loan was to be under the terms and conditions as specified in the commitment agreement. This agreement was dated December 21, 1971 and accepted by the Plaintiff on December 27, 1971.

This commitment provided, among other things, as follows:

"All cost incidental to the preparing of this loan, including title fees, legal fees, appraisal fees, surveys, et cetera, shall be borne by the borrower and may be deducted from the proceeds of this loan. In the event this loan is not closed all fees so incurred shall be payable on demand.

.   .   .   .   .

"This commitment, to be binding, must be accepted by signing one of the enclosed copies, the acceptance to be in this office within ten days from date hereof, accompanied by a standby deposit fee of $30,000.00, said fee to be refunded if loan closed."

Instead of forwarding the standby deposit fee of $30,000 as required by the agreement, the Plaintiff prevailed upon the Defendant to accept a guaranty letter from Park National Bank, the bank with which the Plaintiff did business. This undated letter which was executed at his direction and approved and signed by him and his wife, provides as follows:

### "GUARANTY
Home Beneficial Life Insurance Company
Richmond, Virginia
Gentlemen:

You have issued your commitment for a real estate loan in the amount of

$1,500,000 to John Testerman, et ux dated December 21, 1971, a copy of which commitment is attached hereto and made a part hereof.

Your commitment provides that in the event said loan is not consumated on or before August 21, 1973, you are to be paid a commitment fee of $30,000.

This is to advise that this bank irrevocably guarantees the payment of said $30,000 commitment fee in the event said loan is not consumated by John Testerman, et ux as provided in the annexed commitment. Upon your advice in writing signed by an officer of the Home Beneficial Life Insurance Company that said loan has not been consumated and that said $30,000 fee is due and payable under the terms of your commitment, we will immediately remit to you the $30,000 commitment fee.

In the event said loan is consumated pursuant to said commitment, then the Guaranty shall become null and void and of no further force or effect on the date the loan is consumated."

Thereafter, Plaintiff found his cost estimates too low as to both phase one and two. By letter dated August 17, 1972 he informed Defendant of this situation, advised that he did not intend to start phase two until phase one was completed and "fully paid for," requested that he be released from the commitment contract and be refunded the $30,000 standby fee. He offered to pay such expenses as the Defendant had incurred in connection with the proposed loan. This letter was answered by the Defendant through L. W. Richardson, its Vice-President, by letter dated September 11, 1972 wherein the Defendant offered to review the matter with the idea, perhaps, of being able to lend an additional $200,000 and, on November 20, 1972, came to Knoxville and inspected the building site with Plaintiff. This proposal did not bear fruit because of Plaintiff's failure to forward certain financial information required by the Defendant in connection with increasing the loan. By letter dated December 7, 1972, Plaintiff's loan application for $3,600,000 was approved by Western Savings Bank, which required a two percent refundable standby fee. Thereafter by letter dated December 19, 1972, Plaintiff advised Defendant that, because he really needed a loan of $3,600,000, he considered the negotiations with the Defendant at an end and made demand for the return of the $30,000. This demand was refused by Defendant's Vice-President Richardson by letter of January 17, 1973, wherein he advised Plaintiff as follows:

"In the event the loan is not closed according to those terms the sum of $30,000 deposited by you will be forfeited as per our contract."

Sometime in the interim, Provident Trust Company received information regarding the problem with the loan commitment and its President, Keeling Turner, wrote Defendant on August 31, 1972 and concluded the letter as follows:

"It is our hopes [sic] that this loan can be saved; however, as your loan correspondent, my first responsibility is to you. Whatever you feel is the right action, we will follow in that direction."

On April 27, 1973, John W. Testerman and wife Leslie H. Testerman, Plaintiffs-Appellants, filed suit in the Chancery Court for Knox County against Home Beneficial Life Insurance Company, Defendant-Appellee, and Park National Bank. They obtained a temporary injunction enjoining the Defendant Insurance Company from calling upon the Bank to honor the guaranty, and the Bank from paying the $30,000, and sought a decree that this fee amounted to an uncollectable and unenforceable penalty. The temporary injunction remains in effect pending this appeal. Park National Bank takes no adversary position in this matter, but casts itself in the role of a stake holder and has evidenced its willingness to make

such disposition of the $30,000 as the Court may direct.

Only the Defendant's Vice-President Richardson testified on behalf of the Defendant, and his undisputed proof is that such fees in the amount of two percent are "very standard" and "used by most companies that don't use three percent"; that, although the out-of-pocket loss in connection with the proposed loan by the Defendant was only $3,877.35, because of the loss of participation in rents in connection with the loan, the total loss to the Company would amount to approximately $97,000. He admitted on cross-examination that his Company attempted to keep the money "working at all times" and could not say that his Company failed to make any particular loan because of its commitment to the Plaintiff. He did concede that interest rates rose subsequent to the period the loan to Plaintiff was to be consummated.

The matter was heard before the Chancellor on September 11, 1973 and decision reserved. Thereafter, by memorandum opinion dated October 29, 1973, the Court found for the Defendant Home Beneficial Life Insurance Company, dissolved the temporary injunction and ordered the $30,000 standby fee be paid by the Bank to Home Beneficial Life Insurance Company. Plaintiffs excepted and duly perfected their appeal to this Court.

The validity of the standby fee is assailed by assignments of error in this Court on several fronts.

First, it is urged that the $30,000 fee was not reasonable for liquidated damages, but was in fact a forfeiture or unenforceable penalty.

■ It is clear that the law of this State does not favor forfeitures and penalties; and, even though a sum be stipulated liquidated damages, if it is not reasonable, the Courts will treat it as a penalty or forfeiture and refuse enforcement. Further, if there is a doubt whether a sum is in fact a penalty or liquidated damages, the Courts are inclined to hold the former. *Baird v. Tolliver,* 25 Tenn. 186 (1845); *Patterson v. Anderson Motor Co.,* 45 Tenn.App. 35, 319 S.W.2d 492 (1958).

The cases cited and relied upon by Plaintiffs do not involve a standby fee, such as the case at bar, and the parties concede their research does not disclose such authority in this State.

It is the position of the Defendant Home Beneficial Life Insurance Company that the fee is not a forfeiture or liquidated damages, but rather a part of the consideration of the commitment agreement. The Defendant relies strongly on *Goldman v. Connecticut General Life Ins. Co.,* 251 Md. 575, 248 A.2d 154 (1968); and this case, in our view, is most nearly in point. The commitment agreement in the *Goldman* case provided as follows:

"This commitment, however, shall not became [sic] effective until such time as the Lender has received in addition to the acceptance of this commitment a fee in the amount of $17,000. The Lender agrees to refund this fee if and when the loan is closed and the proceeds have been disbursed. The payment of this fee in no way lessens the Borrower's obligation to close the loan in accordance with the terms of this commitment." 248 A.2d, pp. 155–156.

The Court of Appeals of Maryland sustained the right of Connecticut General Life Insurance Company to retain the fee and employed the following reasoning:

"In today's world, the commitment fee has become a fact of financial life. Most large projects are financed under agreements substantially similar to the one entered into between Greenspring and Connecticut. Boston Road Shopping Center v. Teachers Ins. & Annuity Ass'n, supra, 213 N.Y.S.2d at 526; Continental Assurance Co. v. Van Cleve Bldg. & Const. Co., supra, 260 S.W.2d at 321–322.

The commitment fees are substantial, but are usually stated as a small precentage [sic] of the amount ultimately to be loaned. The courts, in holding that the fees were non-refundable in the event that the project is abandoned or that the borrower fails to take down the funds, have supported their conclusions by finding that the fee was intended to constitute liquidated damages, as in *Boston Road*; as a fee for the commitment, as in *Regional Enterprises* and *Paley* [Paley v. Barton Savings & Loan Ass'n, 82 N.J.Super. 75, 196 A.2d 682 (1964) as a stand-by fee, as in *Chambers*; or as stand-by interest, as in *Continental Assurance.*

We approach the problem somewhat differently. It will be recalled that in the case before us, the contract described the $17,000 as 'a fee' and that the effectiveness of the commitment was conditioned upon the payment of it. The agreement provided that the fee would be refunded when the loan was closed, but neither made reference to the disposition to be made of the fee if the transaction was never consummated, nor described the amount as liquidated damages. Connecticut does not claim that it made any segregation of its funds to cover the commitment, but says that it has been put to expense, which cannot be calculated with any precision. It might also have argued that the fee was intended to protect the lender against the uncertainties of the money market, since a borrower may go elsewhere if interest rates soften.

"Under the facts of this case, we view the payment made by Greenspring to Connecticut as the consideration paid for Connecticut's commitment letter." 248 A.2d, pp. 157–158.

There are cases from a number of other jurisdictions, most of which are cited in *Goldman,* supra, that sustain the validity of such fees. *Regional Enterprises v. Teachers Ins. and Annuity Assoc.,* 352 F.2d 768 (9th Cir. 1965); *Boston Road Shopping Center, Inc. v. Teachers Insurance,* 13 A.D.2d 106, 213 N.Y.S.2d 522 (1961); *White Lakes Shopping Center, Inc. v. Jefferson Standard Life Insurance Co.,* 208 Kan. 121, 490 P.2d 609 (1971); *Continental Assur. Co. v. Van Cleve Bldg. & Const. Co.,* Mo.App., 260 S.W.2d 319 (1953); *Chambers & Co. v. Equitable Life Assurance Soc.,* 224 F.2d 338 (5th Cir. 1955).

■ It is true, as pointed out by the Plaintiffs, that the letter from Defendant to Plaintiff dated December 11, 1972, used the word "forfeited" in connection with the fee. However, particular words used are not conclusive on the parties or the Court. *City of Nashville v. Nashville Tractor Co.,* 142 Tenn. 475, 220 S.W. 1087 (1920). Additionally, the *Patterson* case, supra, cited in Plaintiff's brief, contains the following:

"In determining whether the amount specified in a bond for performance is a penalty or liquidated damages, the particular words are not conclusive on the parties or the Court." 45 Tenn.App. 35, 55, 319 S.W.2d 492, 501.

We concur in the holding of the Chancellor that it is the substance of the transaction, and not the words, that govern. The Defendant's use of the word "forfeited" does not change the substance of the transaction. We likewise concur with the finding of the Chancellor that this fee was a part of the consideration and if reasonable, and does not involve oppression or overreaching, should be sustained.

Plaintiff next contends that the commitment letter was ambiguous, in that, although it provided a refund of the fee in the event the loan was closed, it did not provide the disposition in the event the transaction was not consummated.

■ We are unable to concur in Plaintiff's reasoning. This alleged ambiguity evidently did not become apparent to Plaintiffs' attorneys from April 27, 1973, the date they filed their suit until September 11, 1973, the date of the trial when they

sought to have the complaint amended to allege the ambiguity. Additionally, it affirmatively appears that the ambiguity was not apparent to the Plaintiff, as the letter of guaranty by Park National Bank, forwarded at his direction and over his signature, specifically provided for a disposition of the $30,000, which we think is clearly implicit in the commitment agreement.

Plaintiffs also insist that the letter from Provident to Home Beneficial created a dual agency, not known to Plaintiff, and made any contract negotiated in connection therewith voidable at his option.

■ We agree with this general proposition of law. However, we do not believe the facts of this case sustain a finding that Provident was in fact an agent of Home Beneficial. Agency must be proved by the party asserting the same, *Cobble v. Langford,* 190 Tenn. 385, 230 S.W.2d 194 (1950), and may not be proved by the statements of the agent. *Wade v. Whitsitt,* 9 Tenn.App. 436 (1928).

■ We do not believe the proof in this case sustains the proposition of agency; but, on the contrary, concur in the finding of the Chancellor that such agency has not been shown.

■ The Plaintiffs further argue that, as the interest rates increased subsequent to the period the loan should have been closed, the Defendant actually suffered no damage; but, in fact, benefited in that it lent its money to others at a higher interest rate. This argument ignores the testimony of Vice-President Richardson concerning the rental participation feature of the loan. We should also remember that contracts of this nature must be viewed prospectively from the vantage point of the parties on the date of the execution of the agreement, not on the basis of what did happen, but rather on what could or might have happened.

Assuming *arguendo,* that the interest rates had softened and Plaintiffs could procure a loan at a lesser interest, certainly under the contract they had a right to borrow the money at a more favorable rate. Just as certainly, in our view, they would not be entitled to a refund of their standby deposit fee.

Although it may be Defendant could not point to any particular loan that it did not make during the period in question, it is apparent that it was required to keep its financial house in order for some 20 months to insure having $1,500,000 available to Plaintiff.

■ In this case the Plaintiff entered into a solemn contract with the Defendant whereby the Defendant was requested to make available to Plaintiff one and one-half million dollars, under agreed terms and at an agreed interest rate. A $30,000 refundable standby fee was required. Plaintiff found another lender with whom he could and did deal more advantageously. Under these circumstances, we should think a court of equity would be the last place for Plaintiff to seek relief.

Accordingly, all assignments of error are overruled, the judgment of the Chancellor affirmed, and the costs incident to the appeal taxed to the Plaintiff and the sureties on his appeal bond.

The order of this Court shall be entered 10 days after the filing of this opinion to permit Plaintiff to seek additional review and a continuance of the temporary injunction.

PARROTT and SANDERS, JJ., concur.