CIACCIO, Judge.
Plaintiffs appeal a trial court judgment dismissing their suit on defendant’s motion for summary judgment and awarding defendant the relief sought in its reconven-tional demand. We affirm.
Plaintiffs, Clearview Palms Partnership, Commercial Ventures, Ltd., Gardes Development Group, Ltd., Arthur A. Gardes, Jr., Stanton L. Middleton, Jr. and Stanton L. Middleton, III (hereinafter Clearview Palms) sought financing from defendant, Hibernia National Bank, for the land acquisition, development and construction of a shopping center in Jefferson Parish to be called Clearview Palms Shopping Center. After several months of negotiations, on May 5, 1988, Hibernia approved Clearview Palms’ loan application, and issued a commitment letter whereby Hibernia bound itself to loan Clearview Palms $5,300,000.00 for a period of three years at a fixed interest rate of 10V8%, predicated upon the borrower complying with all the terms and conditions of the commitment letter. The commitment agreement was accepted, as written, on behalf of Clearview Palms Partnership by Stanton Middleton, III and Arthur Gardes on May 9, 1988.
The twelve page commitment letter and attached addendum sets out, in great detail, numerous terms and conditions that the borrower had to meet before the loan would be funded, including the requirement that Clearview Palms had to provide a guaranty of the lease obligations of the proposed shopping center’s primary tenant, Pap’s Food Center. Specifically, the letter required Super Valu, the wholesale company that supplied groceries to Pap’s, to guarantee performance of the first two years of Pap’s lease and required Picadilly Cafeteria, another proposed major tenant at the shopping center, to guarantee an additional twenty-seven months. The exact wording read:

SELECTED COVENANTS IN LOAN AGREEMENT:

10 — Receipt, review and acceptance by HNB and its legal counsel of the following documents:
Agreement by Super Valu for 2 year floating guarantee on the Paps lease during years 1-10 with commencement defined as date of occupancy by Pap’s Food Center.
Agreement by Picadilly Cafeteria, Inc. of 2 year, 3 month guarantee on the Paps lease during the designated months 25-51, month one (1) being defined as date of occupancy by Pap’s Food Center therefore Pieadilly’s guaranty shall commence the month following the expiration of the Super Valu Guaranty Agreement but in no event shall Picadilly’s Guaranty extend beyond a term of 27 months.
The Hibernia letter of commitment also required Clearview Palms to pay a commitment fee:
COMMITMENT FEE: One (1%) percent nonrefundable fee in the amount of $53,-330.00, due upon acceptance of this commitment. Full amount can be drawn back at closing.
In connection with the payment of fees and expenses the letter further provided:

*1208
TIME OF ESSENCE

Time is of the essence hereof with respect to the date, terms and conditions set forth and in the event that any respective term or condition is not fully complied with by the designated date, including without limitation, the submission of the Pre-Closing Documents designated on Addendum A, and any other document required by Lender or Lender’s Counsel, the Lender may declare this revised commitment null and void, and shall be entitled to retain the commitment fee.
At the time of acceptance of the commitment letter, Clearview Palms only paid Hibernia $10,000.00, and Hibernia accepted payment of the remainder of the fee in the form of a promissory note for $43,000.00, payable on October 3, 1988 with Arthur Gardes, Stanton Middleton, Jr. and Stanton Middleton, III personally endorsing the promissory note.
By letter dated June 3, 1988, Middleton informed Hibernia that Clearview Palms could not obtain the Super Valu guaranty. Hibernia responded by reiterating that the $43,330.00 promissory note must be paid.
On October 3, 1988 when the promissory note became due, Clearview Palms paid Hibernia $15,000.00 on the note and executed another promissory note for the remaining $28,330.00 due on December 28, 1988. Gardes, Middleton, Jr. and Middleton, III again personally endorsed the note.
Shortly before the $28,330.00 promissory note matured, Clearview Palms filed suit against Hibernia, seeking a declaratory judgment declaring that Hibernia was not entitled to the commitment fee charged for issuing the letter and that the $28,330.00 note issued in payment of the fee was null, void and unenforceable. Clearview Palms also sought the return of the $25,000.00 previously paid to Hibernia towards the commitment fee. Hibernia answered the suit and filed a reconventional demand seeking enforcement of the $28,330.00 promissory note.
Clearview Palms and Hibernia both filed motions for summary judgment. Attached to the parties’ motions for summary judgment were an affidavit of facts by Stanton L. Middleton, III, letters of correspondence between the parties, the loan agreement between the parties, an affidavit by Maureen Dunne, the Vice-President of Hibernia’s Commercial Real Estate Department, the commitment letter and a copy of the $28,330.00 promissory note. The trial court denied Clearview Palms’ motion. It granted Hibernia’s motion dismissing Clearview Palms’ suit and rendered judgment in favor of Hibernia declaring the promissory note due December 28, 1990 enforceable.
The sole issue before us is whether Clearview Palms is obligated to pay Hibernia the balance of the commitment fee required by the May 5, 1988 commitment letter although the underlying obligation, the $5,330,000.00 loan, was never consummated.
Clearview Palms argues on appeal, citing LSA-C.C. art. 1767, that the commitment letter was clearly subject to a suspensive condition, the Super Valu lease guaranty. Plaintiffs contend because the lease guaranty was not obtained, through no fault of their own, the commitment letter became null, void and unenforceable. They claim the parties then reverted back to their respective positions before they signed the commitment letter, i.e., Hibernia never had an obligation to make the loan and Clear-view Palms never had an obligation to pay a commitment fee. Plaintiffs further argue that the clause in the commitment letter setting forth when the commitment fee was due meant that it would have been due only in the event they obtained the Super Valu guaranty.
LSA-C.C. art. 1767 provides in part:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
Plaintiffs are correct in their assertion that Hibernia’s obligation to loan Clearview Palms $5,330,000.00 was a conditional obligation. The letter of commitment clearly sets forth those conditions. However, the *1209 May 5, 1988 letter of commitment is itself a separate.and distinct contract apart from the actual loan agreement.
The commitment letter, upon acceptance, became a binding contract between Hibernia and Clearview Palms. The cause of this contract was the legally binding promise of Hibernia to fund the $5,300,000.00 loan to Clearview Palms if called upon to do so. In exchange for Hibernia’s promise to make a loan to Clearview Palms for a specified term and at a specified rate of interest, Clearview Palms agreed to pay the stipulated fee. The fee was earned by Hibernia when the commitment letter was accepted by Clearview Palms. The fee was to compensate Hibernia for its promise to make a loan, not for the actual closing of the construction loan.
Clearview Palms’ agreement to pay the fee was not conditioned upon their success in obtaining the Super Valu guaranty or upon their ability to comply with all the other conditions prerequisite to funding. The language of the commitment letter leaves no doubt that it was the burden and responsibility of plaintiffs to comply with the conditions prerequisite to the funding of the loan. If plaintiffs’ inability to obtain the Super-Valu guarantee was construed to be a fortuitous event it is also clear that plaintiffs assumed the risk of such an event. LSA-C.C. art. 1873.
Plaintiffs also argue that because there was no agreement between them and Clearview Palms with regard to what would happen if the Super Valu guaranty could not be obtained, it must be assumed the parties intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in the contract, citing LSA-C.C. art. 2054. We disagree.
Law and the jurisprudence provide that although courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, that intent must be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826 (La.1989); Baber v. Hoffer, 430 So.2d 220 (La.App. 4th Cir.1983); LSA-C.C. art. 2046. Moreover, the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists, and does not authorize courts to make a new contract where the language employed expresses the .true intent of the parties. J.M. Brown Construction Company v. D & M Mechanical Contractors, Inc., 222 So.2d 93 (La.App. 1st Cir.1969).
By the express wording of the letter of commitment, the commitment fee was “non refundable” and “due upon acceptance of this commitment.” The clear language of the- letter makes no provision for the return of the fee or any portion thereof paid by Clearview Palms nor does it contain any condition upon which the payment of the fee for the commitment would be forfeited by Hibernia. Furthermore, the language of the letter does not condition plaintiffs’ obligation to pay the fee on Hibernia’s funding of the loan. The terms of the letter are clear and unambiguous, not in violation of statutory law or public policy. For these reasons, we find that the trial judge was correct in declaring the promissory note evidencing the remaining balance of the commitment fee enforceable.
A search of Louisiana jurisprudence fails to disclose any cases where a borrower was released from paying a commitment fee because the loan was not funded. However there is ample case law from other jurisdictions enforcing loan commitment fees on grounds that the fee constituted liquidated damages (Frank’s Nursery Sales, Inc. v. American National Insurance Co., 388 F.Supp. 76 (E.D.Mich.1974)), or consideration for the lender’s commitment (Shel-Al Corp. v. American National Insurance Co., 492 F.2d 87 (5th Cir.1974)) or was payment for an option (Goldman v. Connecticut General Life Insurance Co., 251 Md. 575, 248 A.2d 154 (1968)).
In his reasons for judgment the trial judge stated:
This Court is of the opinion that we had two separate documents here. The Court is of the opinion that the amount of money of fifty-three thousand dollars *1210 was due from the plaintiffs for the defendant to come forward and give them a commitment letter. To break it down to simplicity for the Court of Appeals to see if it’s in error, this Court feels the plaintiff paid fifty-three thousand dollars for the commitment letter. It paid that amount of money in order to get the commitment letter and what benefits did it get from that commitment letter at the time it attempted to make this loan.
It appears that the plaintiff developer came in rather naked. It didn’t have title to the property. It didn’t have lessees, etc. and therefore he has been able to go out in the street with a letter from a reputable bank such as Hibernia indicating he had a five million three hundred thousand dollar loan. This would induce architects to draw plans. This would induce contractors to be willing to build. This would induce lessees willing to come into the place and to commit themselves for the leases. This is what the Court feels it paid fifty-three thousand dollars for, for that valuable document to walk the streets with and yell out that I have a five point three million commitment and let’s get going; lessees, let’s get going; architects, etc.
The Court feels that it respectfully disagrees with able counsel for the plaintiff and his very adroit memorandum that was submitted which the Court has researched, I have read with a great interest and it though feels very squarely that 1767 is not applicable here, that this wasn’t a suspensive condition, the guarantee.
It was a suspensive condition for the granting of the loan. It wasn’t a suspen-sive condition for the granting of the letter of commitment. The letter of commitment is a separate entity, entity (sic) from the suspensive condition attached to the loan commitment.
A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Moreover, where there is credible evidence before the trier of fact which furnished a reasonable factual basis for the trial court’s conclusion, an appellate court should not reverse when the trial court is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Based on the evidence before us and for the foregoing reasons, we find the trial judge was correct in granting summary judgment in favor of Hibernia National Bank, dismissing Clearview Palms' suit and rendering judgment in favor of Hibernia on its reconventional demand. The trial court’s judgment in all respects is hereby affirmed.
AFFIRMED.