248 N.J. Super. 181 (1991)
590 A.2d 704
IRENE L. AARVIG, PLAINTIFF,
v.
EDWARD AARVIG, DEFENDANT.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided January 31, 1991.
*183 Anthony J. Ruggiero for defendant.
Carole M. Mattessich for plaintiff (Gaver & Gaver, attorneys).
*184 SELTZER, P.J.F.P.
This postjudgment motion requires consideration of the circumstances under which the executory terms of a property settlement agreement may be modified. It is typical of many claims for relief resulting from the impact of a declining real estate market upon property settlement provisions requiring the sale of the marital asset at a fixed price.
The motion papers reveal that plaintiff and defendant were divorced on February 17, 1989. The final judgment incorporated a property settlement agreement which disposed of all issues of child support, alimony and equitable distribution. In particular, the property settlement agreement distributed to plaintiff certain assets and permitted defendant to reside in property located on Broadway in West Cape May pending its sale. The agreement further provided a detailed scheme for the sale of the Broadway property, setting an initial listing price, allowing for reductions in the event the property was not sold and providing "the lowest amount this property shall be listed for is $230,000." At the time of the property settlement agreement, an appraisal had been performed which indicated that the fair market value of the property  between $215,000 and $225,000  was comparable to the lowest listing price permitted  $230,000. The agreement also provided that, upon the sale of the real estate, the parties would divide the net proceeds, subject to some minor adjustments not relevant here, on an equal basis.
Pursuant to the agreement, plaintiff took title to the assets distributed to her and defendant commenced to reside in the property which is the subject of this motion. Despite the prompt listing of the property, and the subsequent reductions of the listing price in accordance with the property settlement agreement, no offer was received on the property from the date of the final judgment to the present. Plaintiff has produced a current appraisal, not disputed by defendant, which suggests that the fair market value of the property has declined by almost 30% to $180,000. It is evident, therefore, that, absent *185 some modification of the property settlement agreement, the property will not sell in the forseeable future, defendant will continue to remain in the premises and plaintiff will be deprived of her equity interest in the real estate.
Plaintiff alleges that this is a condition which the parties never contemplated and which requires a "modification" of the property settlement agreement. Defendant, however, responds that the provisions of the property settlement agreement were voluntarily negotiated, that the parties had specifically contemplated this situation and explicitly provided for it by the plain language of the agreement. Moreover, defendant asserts, had he known that at some future time he might have been required to receive less than one-half of $230,000 for his interest in the property, he would never have acceded to the other provisions of the property settlement agreement.
The resolution of this dispute requires an understanding of the nature of a property settlement agreement and the manner in which courts have treated claims for enforcement or modification. The essentially contractual nature of property settlement agreements has always been recognized by our courts and they are to be construed in accordance with contract law. Dworkin v. Dworkin, 217 N.J. Super. 518, 524, 526 A.2d 278 (App.Div. 1987). There are three distinct circumstances under which courts have considered attempts to modify contracts: (1) when the contract speaks directly to the issue in controversy; (2) when the agreement speaks to the issue but inaccurately reflects the parties agreement and (3) when the agreement is silent as to the matter in dispute.
Generally, once the parties have reached an agreement, no court may create a "new or better" contract for them. Communication Workers of America, Local 1087 v. Monmouth Cty. Bd., 96 N.J. 442, 452, 476 A.2d 777 (1984). That general rule applies as well to agreements made in a dissolution context. Our decisions hold universally that contracts, insofar as they deal with equitable distribution, are not subject to *186 modification by virtue of changed circumstances. Rosen v. Rosen, 225 N.J. Super. 33, 541 A.2d 716 (App.Div. 1988), certif. den. 111 N.J. 649, 546 A.2d 558 (1988); Ganther v. Ganther, 153 N.J. Super. 226, 231, 379 A.2d 473 (App.Div. 1977); Mahoney v. Mahoney, 91 N.J. 488, 498, 453 A.2d 527 (1982). But see, Skoloff & Cutler, II N.J. Family Law Practice (6th Ed. 1990), § 614 at p. 983, 988 (contending that modification should be allowed upon a showing of unconscionability).
Similarly, just as any contract is subject to reformation when it fails to accurately express the agreement of the parties, a contract between parties to a dissolution action may be reformed. A reformation of a contract, however, is not a modification. It is merely a recognition that the scrivener has failed to express accurately what the parties themselves intended and a correction of that failure. Capanear v. Salzano, 222 N.J. Super. 403, 407-408, 537 A.2d 306 (App.Div. 1988).
Finally, if the agreement is silent as to a circumstance which thereafter arises, the parties may not be left without an agreement. So long as the parties intended to be bound by their agreement and a court is able to fill any gaps necessary to achieve a fair and just result, the contract may be modified by the addition of reasonable terms. Paley v. Barton Savings and Loan Assn., 82 N.J. Super. 75, 83, 196 A.2d 682 (App.Div. 1964). It is when the missing provisions go to the essence of the agreement that a court may not insert the probable or reasonable resolution of the situation which would have been provided if the parties had contemplated the existing situation when the agreement was formed. Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 395 A.2d 222 (App.Div. 1978).
When the contracts to which these principles apply are incorporated into a court order, two further considerations apply. The first is that the agreement will not be enforced except to the extent that it is fair and equitable, Schlemm v. Schlemm, 31 N.J. 557, 581-582, 158 A.2d 508 (1960) and the *187 determination of fairness and equitableness must be applied as of the date enforcement is sought, Smith v. Smith, 72 N.J. 350, 359-360, 371 A.2d 1 (1977). This consideration is really nothing more than a repetition of the well-accepted principle that equity will not lend its assistance to achieve an unfair or inequitable result. Brower v. Glen Wild Lake Co., 86 N.J. Super. 341, 206 A.2d 899 (App.Div. 1965). The second consideration relates to the ability of the court to set aside the agreement by virtue of its authority to vacate the judgment in which the agreement is contained. That authority is contained in R. 4:50-1 and in particular R. 4:50-1(f) which provides that relief may be afforded for "any other reason justifying relief." R. 4:50-1(f). That language has been construed to confer power coextensive "with the need to achieve equity and justice." Court Invest Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966). Thus, the standard to be applied in deciding whether to grant relief from a property settlement agreement pursuant to R. 4:50-1 (relief necessary to achieve equity and justice) is the same standard applied in determining whether to enforce it. R. 4.50-1. See Schlemm v. Schlemm, supra, 31 N.J. at 581-582, 158 A.2d 508 (enforcement afforded only to the extent the agreement is fair and equitable).
With these principles in mind, I turn to the particular "contract" presented here. Initially, I note that plaintiff's request for a "modification" is precluded by general contract law (in the dissolution context) as enunciated by Rosen v. Rosen, supra. Accordingly, I must determine initially if the contract language resolves the dispute, for if it does the contractual provisions may not be modified. Although there may be some circumstances in which the parties have clearly and unambiguously recognized their contemplation of an issue and expressed their resolution thereof, this is not such a case. Even though the agreement provides that the lowest amount this property shall be listed for is $230,000, it does not explicitly contemplate a continued listing at that price without regard to time. I am not prepared to conclude the clause is boundless as *188 to duration without explicit instructions contained in the document to that effect. Had the parties intended such a result, a provision certainly extraordinary, it is not unreasonable to require them to express it in the plainest of terms. Since the property settlement agreement language is ambiguous and the parties present factually conflicting affidavits, a hearing must be conducted to determine what the parties contemplated. If that hearing results in a finding that the agreement was intended to cover the present circumstances, thus precluding modification, inquiry must be made as to whether the agreement is so unjust or inequitable that defendant must be relieved from its provisions pursuant to R. 4:50-1(f). That inquiry will, of necessity, implicate the possibility of relief only with respect to the listing agreement provision without disturbing the balance of the agreement. Cf. Edgerton v. Edgerton, 203 N.J. Super. 160, 496 A.2d 366 (App.Div. 1985); Castiglioni v. Castiglioni, 192 N.J. Super. 594, 471 A.2d 809 (Ch.Div. 1984).
If on the other hand, the initial finding is that the parties did not contemplate this change of circumstance, additional inquiry must be made as to whether the parties' probable intent can be ascertained, see Paley v. Barton Savings and Loan Assn., supra, 82 N.J.Super at 83, 196 A.2d 682 (holding that the missing provisions may be added to achieve a "fair and just result"), or if the entire agreement must be set aside, because it lacks an essential provision.
In short, the inquiry is threefold: does the language in question deal with the circumstance at hand? If so, is the manner in which it treats the circumstance so inequitable or unjust that a court should refuse to recognize it? If not, may a reasonable interpretation be provided or is the missing provision so essential to the "contract" that it is really not an agreement at all? In some cases, those issues may be resolved on affidavits, but the factual disputes here require a hearing which is scheduled for March 13, 1991 at 1:30 p.m.